Daniel S.  Szalkiewicz, Esq.  (DS2323)
DANIEL SZALKIEWICZ & ASSOCIATES, P.C.
23 WEST 73RD STREET
SUITE 102
NEW YORK, NEW YORK 10023
*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN DOE,<br><br>                    Plaintiff,<br><br>        v.<br><br>JIA LUN SHAO a/k/a ANDY SHAO and<br>JINGYUN WANG a/k/a VIVIAN WANG,<br><br>                    Defendants. | **COMPLAINT**<br><br>Case Action No. 24-9972 |

Plaintiff JOHN DOE ("Doe" or "Plaintiff"), by his attorneys DANIEL SZALKIEWICZ &

ASSOCIATES, P.C., as and for his Complaint hereby alleges, upon information and belief, as

follows:


## PRELIMINARY STATEMENT

1.      Plaintiff is an Executive Director of a global financial institution headquartered in

the U.S.  Over the course of a thirteen-year career Plaintiff has worked alongside individuals of

countless ages, genders, sexual orientations, ethnicities, religions, and backgrounds happily and

with a spotless record.

2.      Plaintiff's respectful demeanor is why he and his colleagues were especially

shocked when, on or about December 20, 2023, no fewer than 59 members of his employer around

the world – many of whom did not know Plaintiff – received an anonymous e-mail containing a "complaint" against him.

3.      The e-mail allegations were serious, sensational, and yet unsubstantiated, claiming that Plaintiff had engaged in "unprofessional conduct, sexual harassment, bullying, and overpowering of other [Plaintiff's employer] employees both within and outside of the workplace, which had caused tremendous negative impact on [Plaintiff's employer's] reputation and image." The e-mail further claimed that Plaintiff was having affairs, physically assaulting drunk employees for sexual gratification, publicizing confidential information, promoting racial discrimination, and threatening and retaliating against his co-workers who did not give into his demands.

4.      The e-mail and the claims made therein quickly became workplace fodder, detracting from the stellar reputation Plaintiff had worked so hard to build in the competitive field of finance.

5.      Worse yet, on or about the day after the first e-mail blast, a copy of the e-mail and Plaintiff's LinkedIn profile containing his professional portrait was uploaded onto one of the largest social media platforms, RED.  Then, the e-mail was viewable to the public at large and had garnered more than 19,000 views before it was taken down by RED.

6.      To Plaintiff's horror, former colleagues and peers whom Plaintiff had not heard from in years began to contact him to alert him to what they had seen, express shock, and, in various instances, offer support.

7.      Rumors about these allegations reverberated throughout the finance industry, including to Plaintiff's co-workers around the world, competitors, and clients.

8.      Instead of enjoying his long-awaited getaway with his girlfriend, Plaintiff spent his Christmas and New Year holidays in distress, assessing and managing the damage and researching how to protect himself from such malicious lies.

9.      More than that, in or about January 2024, not long after the first e-mail was sent, another e-mail address was used to send numerous other e-mails to Plaintiff's girlfriend on her work account as well as to members of Plaintiff's employer's senior management and HR department, among others.   These e-mails contained even more lies about Plaintiff's alleged misconduct.

10.     Plaintiff's employer, acting according to its standard global policy, launched an investigation into the allegations and placed Plaintiff on customary administrative leave until the investigation was completed.

11.     On or about February 21, 2024, in an attempt to obstruct the ongoing investigation and inflict more harm on Plaintiff, the harassers blasted another e-mail to an expanded audience of no fewer than 90 recipients, this time copying more than two dozen members of major U.S. press firms as well as his employer's Group Chairman and CEO in the U.S.  The e-mail attempted to publicly shame Plaintiff's employer into terminating Plaintiff, not because he had done anything wrong, but for the sake of appearances.

12.     After a month-long, thorough, and zero-tolerance investigation, Plaintiff's employer reinstated Plaintiff, but the devastating damage to Plaintiff's reputation and career prospects had already been done and was far beyond repair.

13.     Innocent and determined to learn the identity of his harassers and bring them to justice, Plaintiff initiated a pre-action petition for disclosure against Google LLC and Verizon

Communications Inc in the U.S. to obtain subscriber information sufficient to identify his harassers.

14.     Digital footprint information returned from pre-action discovery demonstrates that the individuals attacking him are a husband-and-wife duo Jia Lun Shao a/k/a Andy Shao ("**Andy Jia Lun Shao**") and Jingyun Wang a/k/a Vivian Wang ("**Vivian Jingyun Wang**[,]" and together with Andy Jia Lun Shao, "**Defendants**").

15.     Defendant Vivian Jingyun Wang is an Investment Banking Associate in the U.S. office of Plaintiff's employer and previously worked for Plaintiff in Hong Kong in or about 2023. While Defendant Vivian Jingyun Wang and Plaintiff once had a sufficiently cordial workplace relationship, it became strained after Defendant Vivian Jingyun Wang blamed Plaintiff for not reciprocating her romantic feelings, for not showing her favoritism at work, and for her getting what she viewed as a "disappointingly fair" performance rating.  These personal angers culminated in her desire to hurt Plaintiff for revenge.

16.     Defendant Andy Jia Lun Shao works in risk management in Citibank's U.S. office and has never met Plaintiff.  Nonetheless, Defendant Andy Jia Lun Shao actively participated in his wife's scheme of lies to harass Plaintiff.

17.     In or about January 2024, Defendant Vivian Jingyun Wang relocated to the U.S. to move in with Defendant Andy Jia Lun Shao, her new-husband at the time.  Prior to Defendant Vivian Jingyun Wang's relocation and following it, she and Defendant Andy Jia Lun Shao engaged in a months-long campaign to destroy Plaintiff's reputation and cause his professional and personal ruin.

18.     Defendants' unbridled retaliation scheme is evidenced no more clearly than by their ongoing behind the scenes harassment of Plaintiff, his girlfriend, and a young female law student in the U.S. (herein referred to as "**Miss X**").

19.     Miss X was originally Defendant Andy Jia Lun Shao's friend but voluntarily reported Defendants' malicious acts to Plaintiff's and Defendant Vivian Jingyun Wang's employer because she was disgusted by their portrayal of Plaintiff and even more by their sickening attempt to use her to further their scheme to harm Plaintiff.  For that, Miss X had been brutally punished by Defendants in the months that followed.

20.     More specifically, Miss X had never met Plaintiff before but used to work in another regional office of Plaintiff's employer.  In or about mid-December 2023, just a few days before the first blast e-mail, Defendant Andy Jia Lun Shao used this connection to manipulate her to introduce herself to and meet with Plaintiff – whom he described as a "great mentor" – in a perverted effort to use their meeting to portray Plaintiff as a monster that preyed on other women outside of his relationship.

21.     Later, Defendants repeatedly attempted to coerce Miss X to lie and corroborate their false allegations against Plaintiff, but she refused to surrender to their coercion and instead blew the whistle on them to Plaintiff's and Defendant Vivian Jingyun Wang's employer.

22.     Once Defendants learned that their public scheme to have Plaintiff terminated had failed, they spiraled into shame rage and took it out on Miss X, whom they viewed as having "stood in their way."  Indeed, Defendants began contacting her ex-boyfriend, friends, school, and prospective employer, making up a variety of dreadful lies against her academic, professional, and ethical integrity.  Defendants even accused Miss X of unchaste behavior such as cheating on her

ex-boyfriend and having unprotected, one-night-stand sex with Plaintiff resulting in accidental pregnancy.

23.    Defendants' allegations against Miss X were wholly fabricated and made solely to disrupt her life and punish her for outing their scheme against Plaintiff.

24.    Defendant Andy Jia Lun Shao even went as far as stalking Miss X at her school campus and boasting about inflicting bodily harm on her.  This was particularly terrifying to all involved due to Defendant Andy Jia Lun Shao's history of dangerous behavior including having been arrested in the U.S. for "Battery Touch or Strike."

25.    Defendants' harassment knows no bounds and is rooted in a desire to punish Plaintiff rather than bring light to truth.  They started by abusing well-founded public concerns about power and gender dynamics in the finance industry, and when they learned that their scheme to get Plaintiff terminated by his employer had failed, they inflicted revenge using the only means still available to them: by hurling a series of relentless retaliatory attacks at not only Plaintiff, but also people who stood up for justice like Miss X.

26.    Defendants' callous, self-serving, and entirely false allegations about Plaintiff have reverberated through the office and Plaintiff's industry, causing him devastating, worldwide personal and professional reputational harm that is irreversible, as well as severe, ongoing emotional distress.

27.    Accordingly, and in the interest of clearing his name and obtaining justice, Plaintiff brings this Complaint.

## JURISDICTION AND VENUE

28.     This Court has subject matter jurisdiction of this case pursuant to 28 U.S.C. 1332(a)(2), in that it is between a citizen of a foreign country and citizens of this State, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

29.     Plaintiff is a citizen of Hong Kong Special Administrative Region in the People's Republic of China.

30.     Defendant Andy Jia Lun Shao (Chinese name: 邵嘉伦) is a citizen of New Jersey who currently resides at 1100 Avenue at Port Imperial, Unit 402 Weehawken, NJ 07086.

31.     Defendant Vivian Jingyun Wang (Chinese name: 王婧蕴) is a citizen of New Jersey who currently resides at 1100 Avenue at Port Imperial, Unit 402 Weehawken, NJ 07086.

32.     During all subject times relevant to this complaint, Defendants were the owners, operators, and persons who utilized the following e-mail addresses:

   a.  [Plaintiff's first and last name minus one letter]@gmail.com
   b.  Lucy116503@gmail.com
   c.  Reporton[Plaintiff's initials]@gmail.com
   d.  Andyyy.SJL@gmail.com
   e.  Reporton[Plaintiff's initials]@proton.me
   f.  AnoAnoAnoy2024@gmail.com
   g.  AbeAbeeee834@gmail.com
   h.  AloAloooo9991@gmail.com

33.     Subpoena responses demonstrate Defendants' frequent utilization of their online harassment accounts – including at or about the time blast e-mails were sent – from I.P. addresses registered to their current or past home addresses in Jersey City, New Jersey and Weehawken, New Jersey.

34.     Venue in this District is appropriate pursuant to 28 U.S.C. § 1391, as the District Court of New Jersey is the Judicial District in which the Defendants reside, in which a substantial

part of the events forming the basis of the Complaint occurred, and where a substantial part of the evidence involved in the subject action is situated.

## FACTUAL ALLEGATIONS

**Vivian Jingyun Wang Meets and Begins Acting Inappropriately Toward Plaintiff**

35.    Plaintiff first met Defendant Vivian Jingyun Wang at work in or about July 2022 when Plaintiff was a Vice President at a global financial institution (promoted to Executive Director in 2023) and Defendant Vivian Jingyun Wang an Associate in his team, both based in Hong Kong.

36.    Beginning in or about early-2023, Plaintiff began suspecting that Defendant Vivian Jingyun Wang was harboring romantic feelings for him.

37.    More specifically, Defendant Vivian Jingyun Wang insisted to work only on Plaintiff's projects and sought his attention at work.

38.    On one occasion when Plaintiff left Defendant Vivian Jingyun Wang with work before leaving the office, she asked Plaintiff "how could you abandon me?"  Soon after Plaintiff indicated the task was "an Associate's work, let's talk when you have another draft," she was found weeping at her desk to the point where a co-worker felt compelled to bring her a tissue.

39.    Defendant Vivian Jingyun Wang additionally and repeatedly sought validation and praise from Plaintiff, including insisting she was the "special one" of all the Associates and asking questions including "I must be the only one that understands your technical instructions, right?" and "what would you do without me?"

8

40.    Defendant Vivian Jingyun Wang also showed jealousy toward other females with whom Plaintiff worked, including demeaning their performance at work and claiming to third parties that one employee copied her style of dress to appeal to Plaintiff.

41.    In another instance, in response to Plaintiff's debriefing that a meeting was "a bit technical and dry," Defendant Vivian Jingyun Wang asked "would you have preferred it to be wet?"  On occasion, she would also share with Plaintiff stories of her own romantic encounters to try to engage Plaintiff in flirtatious conversations.  Each time, Plaintiff would not participate in Defendant Vivian Jingyun Wang's advances.

42.    At the time, Defendant Vivian Jingyun Wang's behavior with Plaintiff stood in stark contrast with her otherwise professional demeanor at work.

43.    Eventually Defendant Vivian Jingyun Wang began speaking ill of Plaintiff's partner, indicating that, unlike her, his girlfriend was poor and single-parented, which would be indicative of unfixable deep character issues.  The undertone of Defendant Vivian Jingyun Wang's statements about Plaintiff's girlfriend was clear: that she possessed the qualities that his girlfriend lacked and would thus be a better match for Plaintiff.

44.    Plaintiff relayed his suspicions to his girlfriend and the two discussed whether Plaintiff should report Defendant Vivian Jingyun Wang to his employer's HR department.  Ultimately, because her advances were subtle, because it did not appear to be impacting her job performance, and because he did not want to disrupt the workplace, Plaintiff chose not to escalate the issue any further.

45.    Plaintiff further agreed with his girlfriend that he would take a "business-as-usual" approach with Defendant Vivian Jingyun Wang to avoid upsetting her because he had to rely on her on quite a few of his projects at work at the time.  Plaintiff hoped that whatever affections

Defendant Vivian Jingyun Wang had developed for him would wane with time and lack of reciprocation.

**In September 2023, Vivian Jingyun Wang Requested Plaintiff Represent Her at the Annual Performance Roundtable**

46.    In or about September 2023, Defendant Vivian Jingyun Wang requested Plaintiff represent her at their employer's "Roundtable[,]" an annual process used by Plaintiff's employer to rate employees for their job performance.

47.    Notably, Plaintiff was neither Defendant Vivian Jingyun Wang's line manager nor her default Roundtable representative at the time, and would have had no role in her Roundtable process if she had not proactively requested his involvement.

48.    Defendant Vivian Jingyun Wang indicated she wanted Plaintiff to replace her line manager in representing her because she chose to work exclusively on his projects that year and because she said she "only trusted him."

49.    After business and HR leaders approved such change, Plaintiff agreed to take on the task as part of his professional duties since his team also observed that Defendant Vivian Jingyun Wang did choose to work exclusively on his projects that year.

50.    In the month or so leading up to the Roundtable day, Defendant Vivian Jingyun Wang requested various prep sessions with Plaintiff.  During these sessions, she urged Plaintiff to get her the highest performance rating, labeling herself his "Star Associate."

51.    While it was not uncommon for juniors to feel deserving of a high rating, Plaintiff still felt obliged to remind Defendant Vivian Jingyun Wang that she would be ranked based on professional performance and nothing else, that competition at the Roundtable would always be intense, and that there were various factors at play outside of his control.

52.    Notably, multiple layers of checks and balances were built into the Roundtable process.  First, Defendant Vivian Jingyun Wang's draft performance rating going into the Roundtable – like all other Associates' – had to be pre-submitted.  This draft rating was not proposed by Plaintiff but instead controlled by her line manager and other business leaders in her team.  Additionally, once brought to the Roundtable, her rating would be further influenced by written feedback from superiors elicited by Defendant Vivian Jingyun Wang ahead of the Roundtable, as well as live feedback from the many participants in the Roundtable including representatives from other teams and independent Roundtable Chairs.  Lastly, her actual rating leaving the Roundtable – again like all other Associates' – had to be final approved by business leaders of her team and HR department after they confirmed no objection.

53.    All this is to say that the draft rating for Defendant Vivian Jingyun Wang with which Plaintiff arrived at the Roundtable was *not* determined by him, and her final rating post Roundtable was further influenced by multiple factors outside his control.

54.    In or about mid-October 2023, Plaintiff went on to represent Defendant Vivian Jingyun Wang at the Roundtable in a fair and impartial manner, and her final rating was in line with the expectation of her line manager and business leaders, who provided their final e-mail approval.

**Vivian Jingyun Wang Inappropriately Accessed Her Rating Outcome in October 2023 and Blamed Plaintiff for What She Considered a "Disappointingly Fair" Result**

55.    Right after the Roundtable, Defendant Vivian Jingyun Wang asked Plaintiff to provide her with information about her rating outcome ahead of official release.  Plaintiff refused, indicating it was a violation of confidentiality.

56.     Desperate to learn more, Defendant Vivian Jingyun Wang inappropriately accessed Plaintiff's computer while he was not attending to it, read his e-mails, and learned about her rating outcome.

57.     Defendant Vivian Jingyun Wang was overtly disappointed and blamed Plaintiff for her not getting what she wanted, stating "so that's how you pushed for your favorite Associate?"

58.     As it turned out, Defendant Vivian Jingyun Wang had expected Plaintiff to show favoritism and sing her praises to advance her career unfairly.  Plaintiff reiterated to her that he had always intended to carry out his duties on a strictly professional basis and that the outcome was objectively fair.

59.     In response, Defendant Vivian Jingyun Wang disappointedly commented that if she just wanted "fair," she would have left it for her line manager to represent her.


**Vivian Jingyun Wang Informed Plaintiff in Late-October 2023 of Her Intention to Relocate to the U.S. Office for Her Planned Marriage**

60.     In or about late-October 2023, Defendant Vivian Jingyun Wang asked for Plaintiff's views on her planned relocation to the U.S. office to be engaged with Defendant Andy Jia Lun Shao, her new boyfriend of approximately one month at the time.

61.     On or about October 30, 2023, Defendant Vivian Jingyun Wang made the final decision to relocate for her marriage.  Plaintiff courteously thanked her for her contribution to his team and wished her all the best, which she took fairly amicably saying, "thanks for the advice, you are my friend in the team afterall."

62.     While Plaintiff knew he would need to shoulder the extra burden of staffing transition and replacement, he was also relieved that he would no longer have to navigate around Defendant Vivian Jingyun Wang's workplace advances.

**Vivian Jingyun Wang Quiet Quit while Awaiting Relocation and Began Retaliating Against Plaintiff in November 2023**

63.    In or about November 2023, with an important project quickly approaching, Plaintiff attempted to find a replacement Associate to provide his team with desperately needed coverage.

64.    Unfortunately, Plaintiff was unable to find an alternative Associate fully ready to take over the project work and was forced to continue to rely on Defendant Vivian Jingyun Wang.

65.    Defendant Vivian Jingyun Wang, however, was no longer interested in continuing her work on Plaintiff's team as she awaited transfer. Her work performance plummeted and she developed an increasingly hostile attitude toward Plaintiff and those around her.

66.    Because Defendant Vivian Jingyun Wang was still the key Associate for said project and Plaintiff had a job to do, he attempted to cheer her past the metaphorical finish line including encouraging her to contribute "one last gift" for the team.

67.    Defendant Vivian Jingyun Wang's demeanor would sometimes soften and her productivity would occasionally improve but, inevitably, she would always revert to displays of disinterest or outright hostility.

68.    On one occasion, after being asked to continue working on said project, Defendant Vivian Jingyun Wang snapped at Plaintiff saying, "I can't believe you are still expecting me to deal with this useless shit for you." Plaintiff reminded her that her behavior was unprofessional and that she was expected to remain committed even though her transfer was imminent.

69.    Defendant Vivian Jingyun Wang took Plaintiff's feedback to heart, but not in the way Plaintiff had hoped.

70.    Initially, Defendant Vivian Jingyun Wang all but ignored the project on which Plaintiff had requested her help and, later in or about December 2023, decided that she would not turn up in the office for work but instead – and against firm policy – stayed in an overseas location.

71.    Around that time, Defendant Vivian Jingyun Wang also started to spread rumors that Plaintiff was too demanding at work, as illustrated in the below screenshot where she complained hysterically to her work friend about the professional guidance he gave her at work:



72.    Later, Defendant Vivian Jingyun Wang's narrative against Plaintiff mutated to take on a sexual harassment flavor.  Before long – and just prior to her transfer to the U.S. – she conspired with her then new-husband, Defendant Andy Jia Lun Shao, to launch their scheme to defame Plaintiff, who continued to reside in Hong Kong.

**Defendants Sent Their First Blast E-Mail on December 20, 2023**

73.    Using the e-mail address [Plaintiff's first and last name minus one letter]@gmail.com – just one letter shy of Plaintiff's true name – on or about December 20, 2023, Defendants sent a false and defamatory e-mail to no fewer than 59 members of Plaintiff's employer around the world, many of whom did not know Plaintiff.  Unsurprisingly, the allegations therein were serious, sensational, and yet unsubstantiated.  The e-mail claimed to be an "joint effort" and emphasized the existence of "evidence," but such was never provided.  More specifically, the e-mail stated:

> Dear Human Resource and IBD management team,
>
> This email is a complaint letter against [**<u>Plaintiff</u>**]'s unprofessional conduct, sexual harassment, bullying, and overpowering of other [Plaintiff's Employer] employees both within and outside of the workplace, which had caused tremendous negative impact on [Plaintiff's Employer]'s reputation and image. His actions also had a detrimental impact on the mental and emotional health of several [Plaintiff's Employer] junior employees, including myself.
>
> Below is a list of inappropriate activities done by [Plaintiff]:
>
> •    [Plaintiff] repetitively spreads and sends adult and inappropriate content, videos, images, and jokes on Social Media to other [Plaintiff's Employer] employees.
> •    [Plaintiff] on numerous occasions, had made inappropriate jokes in the office and during meetings with juniors such as "This is as big as I can get" and "I'm so obsessed with numbers ending in 69."
> •    [Plaintiff], while in a committed relationship, is concurrently having multiple other sexual affairs, and is active daily on Dating Apps seeking hookups.
> •    [Plaintiff] repetitively asks female junior employees at [Plaintiff's Employer] to go on dates and drinks on the weekends, despite numerous denials. [Plaintiff] continuously sends date requests and uses excuses such as "work discussion dinner" and "this will impact your performance" to force some juniors to go on dates, [Plaintiff] then tries to get the female employees to get drunk and physically assault the employees such as trying to grab their hands, hugging, kissing and wanted to take them home by force.

• Whenever [Plaintiff]'s date or drink request is denied by an employee, he retaliates at the workplace by cursing, isolating, giving the employee more work, and deliberately making things more difficult than her peers.

• [Plaintiff] publicly talks about confidential client information with colleagues outside of the deal and discusses work-related items via disallowed communication channels such as WhatsApp and WeChat.

• [Plaintiff] had threatened female employees to not send complaints about him or he would use his power and connection to cease the complaint and swear to retaliate to the juniors by making them fired by [Plaintiff's Employer] and will do whatever he can to stop the juniors to get another job in Hong Kong. [Plaintiff] had also provided examples of analysts at his past company, who tried to report sexual harassment of senior management but in the end, the junior got laid off. In addition, [Plaintiff] had said "This is the culture at [Plaintiff's Employer], you have to accept it or quit, all the other senior management at [Plaintiff's Employer] will bully and harass you even worse."

• [Plaintiff] promotes geographical discrimination by openly despising, disrespecting, and speaking about his hatred of Mainland China. During dinners, he used sentences such as "People from the Mainland are barbarians and uncivilized with no manners." While performing due diligence in the past in Henan Province (河南省), he used sentences such as "I hate Henan, Henan is such a poor place."

This complaint is a joint effort of multiple [Plaintiff's Employer] employees and alumni who were or still are victims of [Plaintiff]'s actions. **Evidence has been collected and will be sent to Compliance and HR upon request.** We urge investigations on [Plaintiff] to be conducted with priority and diligence.

Regards,

74.    On or about the following day, the letter was "leaked" to one of the largest social media platforms, RED.  While the post was eventually removed by RED, with the speed of modern social media, it had already garnered more than 19,000 views prior to being removed.

75.    Upon information and belief, it was Defendants who took a picture of the blast e-mail they had sent and arranged for it to be sent as a "tip" to one of the finance-focused public

accounts on RED (with more than 33,000 followers), alongside Plaintiff's LinkedIn profile and professional portrait.

**Defendants Sent Their Second Blast E-mail on January 4, 2024 and Then a Series of Targeted Harassing E-mails within the Month**

76.     On or about January 4, 2024, Defendants sent another blast e-mail, this time from the e-mail address Reporton[Plaintiff's initials]@gmail.com and to a subset of the recipients from their first e-mail, focusing on top management and HR department staff at Plaintiff's employer.

77.     Defendants blasted this second e-mail to coerce Plaintiff's employer into punishing Plaintiff without cause and in retaliation for their belief that Plaintiff had prevented Defendant Vivian Jingyun Wang from expediting her transfer to the U.S.

78.     Notably, Plaintiff in fact had no approval authority over her transition period.

79.     The second blast e-mail had a subject line "**Important** Follow-ups on the compliant letter against [Plaintiff]" and contained more lies against Plaintiff, this time claiming to have "attached" evidence, with none actually accessible.  More specifically, the e-mail stated:

> Dear HR contact and team,
>
> This email is a follow-up regarding the compliant letter sent against  **[Plaintiff]** on 20 Dec 2023. **To protect the firm, this email only targets at relevant people and excludes all the juniors / employees from other teams.**
>
> Upon last request letter, other victims of [Plaintiff] approached us to provide more details and thereby, we would like to add a few points here:
>
> • Several juniors are sending us additional evidences regarding #2 item of the compliant letter sent last time ([Plaintiff] repetitively makes inappropriate jokes in the office)  [photo1,2 as attached]
>
> • [Plaintiff], while being the line manager of a few employees, sent year-end performance reviews to juniors to let them take a look at before submitting to the system, creating unfairness to other employees

- We mentioned to HR separately last time that evidences can be provided in FIG junior's phones, whereas FIG juniors do not receive any 1on1 meeting invite so far, and [Plaintiff] is working as usual on all the live projects. So that a junior expressed concerns on whether the firm will be protecting senior / whether stating the fact might impact his/her own career and asks his/her friend on whether he/she should to state the real fact to HR [photo3 as attached]

- Another junior mentioned that [Plaintiff] is sending adult jokes on Instagram to her, despite the junior's apparent uninterested replies.

[Plaintiff]'s unprofessional conducts create multiple problems and there is an outbreak of public rumors on social medias (Weibo, Xiaohongshu and etc.). To protect the firm, we would not send any record to irrelevant people at this stage.

Regards.

80.    On or about January 5, 2024, also using Reporton[Plaintiff's initials]@gmail.com, Defendants forwarded the same e-mail with further language to Plaintiff's girlfriend. Not satisfied with harming "only" Plaintiff's career, Defendants invented more false allegations that Plaintiff made derogatory comments and acted in unchaste ways against his girlfriend, all with the sole intention to manipulate her to cut ties with him.

81.    Despicably, these derogatory comments about his girlfriend had actually been made by the Defendant Vivian Jingyun Wang herself. More specifically, the e-mail to Plaintiff's girlfriend stated:

Dear,

- [Plaintiff] mentioned in office to juniors that when he went to Henan Province, his girlfriend used a motor / electric bicycle to pick him up, and he thinks Henan Province is too poor [we mentioned due diligence only last time to protect his girlfriend]
- [Plaintiff] mentioned in the office that his girlfriend comes from a single-parent family, and he mentioned during drinks that he would like to marry a girl who comes from a rich family, because he thinks his job is of too much pressure and he might want to quit one day

- [Plaintiff] mentioned that for the travelling trip to Maldives, his girlfriend will be taking charge of hotels and he will be taking charge of air tickets, so that 'his girlfriend must be spending more than he does'
- We cannot record videos while [Plaintiff] is trying to pat the thighs, to hug shoulders, and to use his arms to press against junior's arms during multiple occasions; we are hoping that there is CCTV inside of [Plaintiff's Employer] office which can possibly record such behaviors

We hope all is fine. To protect the company and other irrelevant people, no additional information will be sent to anyone who is not involved in this affair at this stage.

This email is not monitored and will not be replied to. We will keep a close contact with the [Plaintiff's Employer] investigation team.

Girls help girls.
Thanks, and Regards.

82.    Also, on or about January 5, 2024, Defendants sent an e-mail – again using Reporton[Plaintiff's initials]@gmail.com – to various recipients in BCC including Miss X, asking them to share any "evidence" against Plaintiff in support of their blast e-mails.  It cannot be clearer from this act that Defendants never had any legitimate evidence and were going on a fishing expedition only *after* sending the blast e-mails, one that inevitably and completely failed.  More specifically, the e-mail received by Miss X stated:



83.    Meanwhile, Defendant Vivian Jingyun Wang continued to fan the fire at Plaintiff's workplace by spreading more lies about Plaintiff's character to corroborate allegations in the blast e-mails.

84.    On or about January 29, 2024, Defendants again used Reporton[Plaintiff's initials]@gmail.com to send another series of e-mails containing more lies, this time to Plaintiff's girlfriend and Miss X, in hope that they would cut ties with Plaintiff. Defendants even threatened Miss X – also residing in the U.S. – that they would locate her to show her the evidence in person if she still would not believe them.

85.    The first e-mail, sent at 4:20 p.m., read: "Hi Both, Happy to share pieces of evidence of [Plaintiff]'s unprofessional behavior with you if you still cannot believe so. Regards."

86.    The second e-mail, sent at 5:01 p.m., stated: "Please kindly reflect on [Plaintiff]'s behaviorals. We certainly believe that as two ex-[Plaintiff's employer] employees, you will find out the absurdities. We do hope that you are not deceived by [Plaintiff] anymore. Evidence will be forwarded to you only in due course."

87.    The third e-mail, sent at 5:00 a.m. in the following morning, indicated two e-mail recipients, stating to one "We will let someone in New York City show the evidence to you directly tomorrow" and to the other "We will forward you the record in due course. Thank you!"

88.    On or about February 1, 2024 at 11:03 p.m. Defendants, yet again, repeated the same tactic in an e-mail sent from Reporton[Plaintiff's initials]@gmail.com to Plaintiff's girlfriend, stating:

> There is multiple evidence of his sexual harassment behavior.  All have been collected and forwarded to the Compliance department.  This e-mail is a joint effort of many victims of [Plaintiff].

89.    While overwhelmed by Defendants' harassment, Plaintiff's girlfriend and Miss X remained fully confident in Plaintiff's innocence and good character.  In fact, both chose to reach out to Plaintiff's and Defendant Vivian Jingyun Wang's employer separately to blow the whistle on Defendants' behavior.

90.    Sadly, Plaintiff's girlfriend's and Miss X's choice to stand up for justice – while courageous – inevitably put them in the crosshairs of Defendants, who would continue to harass them in the months that followed.

**Defendants Sent More Blast E-mails in Late-February 2024 to Desperately Resuscitate Their Failing Scheme**

91.    By late-February 2024, Defendants were well aware that Plaintiff had not been terminated.  Upon information and belief, they also learned that Plaintiff's employer was completing its investigation and intended to reinstate him at work.

92.    Desperate to resuscitate their failing scheme to have Plaintiff terminated, Defendants resorted to an extreme escalation of their attack, in hope of creating sufficient public pressure on his employer to change its decision.

93.    First, Defendants created the account Reporton[Plaintiff's initials]@proton.me to send yet another blast e-mail to members of Plaintiff's employer on or about February 21, 2024. In the e-mail, Defendants knowingly lied about Plaintiff being dismissed to place third parties under such false impression in order to "validate" their claims about him. Worse still, they started to accuse Plaintiff of other more serious crimes such as insider trading and rape. Defendants also continued to operate under the false pretense of having "evidence," this time also threatening to expose it to "WSJ reporters" and pursue the matter criminally. More specifically, this e-mail stated:

> Dear Recipients,
> We have received updates that [Plaintiff] has been dismissed from [Plaintiff's employer] for his misconducts. We appreciate the fair investigation of [Plaintiff's employer's] HR and senior management team. Over the past month, we have heard numerous updates of [Plaintiff] accusing [Plaintiff's employer] of the unfair investigation outcomes due to having 0 evidence on any of the accusations. We are not sure what [Plaintiff]'s counterarguments and next steps are, but if [Plaintiff] wishes, we are willing to distribute the evidences (including screenshots, photos and recordings) publicly to the people on this email chain and to WSJ reporters. In addition, we have received numerous complaints from other victims on [Plaintiff] on the following accusations:
> -    [Plaintiff] was accused of using and manipulating material non-public information (MNPI) for personal and monetary benefits
> -    [Plaintiff] abused the company reimbursement benefits and submitted unwarranted expense claims
> -    [Plaintiff] attempted to rape a victim after getting the victim drunk
> -    [Plaintiff] forced the victim to have unprotected sex and refused to take any responsibility for the foreseen consequences
> We are currently working with these complainants to collect evidence and validate the above accusations. Our priority is to preserve the privacy and reputation of the victims but will proceed with filing a criminals case if necessary.

94.     Shortly thereafter, on or about February 22, 2024, Defendants used their [Plaintiff's first and last name minus one letter@gmail.com] e-mail address to forward the very first blast e-mail (sent on or about December 20, 2023) to an expanded audience of no fewer than 90 recipients, this time also copying his employer's Group Chairman and CEO in the U.S. and more than two dozen members of major U.S. press firms – NBC Universal and Wall Street Journal – just like they had threatened in their previous e-mail using Reporton[Plaintiff's initials]@proton.me.   In this e-mail, Defendants complained that Plaintiff's employer still had not taken any official action to punish him, which they claimed left them "no choice" but to publish the e-mails to U.S. reporters.

95.     To create a false impression of legitimacy, Defendants included a Google Drive link where they claimed to have stored "evidence."   Predictably, the Google Drive was password protected and, upon information and belief, no recipient was ever able to gain access to the drive. This e-mail stated:

> Dear Human Resources and Senior Management team,
> It has been 2 months since the initial complaint about [Plaintiff] was mailed and yet, there has not been any official announcement on [Plaintiff's Employer]'s decision.  It also has been over a month since evidence of these accusations was collected by the investigation team.   We are not sure whether a fair outcome can be reached.
>
> Therefore there is no choice but to seek justice outside of [Plaintiff's Employer] by exposing [Plaintiff]'s actions to the media, followed by filing a criminal litigation against [Plaintiff] upon agreement by the victims.
>
> Reporters of WSJ and CNBC are cc-ed in this chain and can request access to the below link where evidence of [Plaintiff]'s accusations is stored.
>
> https://drive.google.com/drive/folders/1xlDEJjbAjiWF7CjbIHvT4UaCPf NgR0oH?usp=sharing
>
> Regards,

96.     Upon information and belief, Defendants' true motivation in sending the e-mail was to pressure Plaintiff's employer into terminating Plaintiff solely for the sake of appearances.

97.     However, just two days later, on or about February 23, 2024, after being put on notice by e-mail and internet service providers that Plaintiff was seeking to subpoena information sufficient to establish their identity, Defendants succumbed to fear of being exposed and hurried to cover their own backs.

98.     For instance, they contacted Plaintiff and Miss X on the same day – using Reporton[Plaintiff's initials]@proton.me – to make up a story that their earlier allegations were unsubstantiated upon "further investigation."

99.     Upon information and belief, Defendants at that point recognized they had been caught and were attempting to make up an excuse that their accusations were sourced from some unspecified third party.  As Defendants concocted and disseminated these accusations themselves with reckless disregard of their falsity, their attempt to lay blame elsewhere was nothing but a hollow attempt to evade liability.   More specifically, this e-mail stated:

> Dear [Miss X] and [Plaintiff],
>
> This message is to update both of you that the below accusations are deemed to be lacking evidence. We received complaints stating [Miss X] has evidence on the below but she denied upon our investigation. Sorry for the inconvenience to both of you. The original email was only sent to you two as a notification of the investigation and was not meant to be offensive or to harm anyone's reputation.

**Defendants Relentlessly Attacked Those Who Vindicated Plaintiff until April 2024**

100.    Outrageously, Defendants harassed not only Plaintiff but also those who stood up for justice.

101.    Using a scheme of lies and intimidation, Defendants callously attacked Miss X and Plaintiff's girlfriend, who had tried to vindicate Plaintiff's innocence and good character.

102.    Initially, Defendants attempted to alienate Plaintiff by putting his girlfriend and Miss X under the impression that he was a monster, hoping that they would cut ties with him and corroborate Defendants' allegations.

103.    Later, as Defendants learned that both his girlfriend and Miss X refused to submit to their coercion and chose to blow the whistle against them to Plaintiff's and Defendant Vivian Jingyun Wang's employer, they started to retaliate.  Worse still, after finding out that their scheme to get Plaintiff terminated by his employer had finally failed, Defendants took their shame rage out on Miss X and Plaintiff with a monthslong campaign of escalated attacks.

104.    Defendants collectively sent to Miss X, Plaintiff, and his girlfriend more than 90 e-mails containing threats, manipulative lies, falsified chat histories, as well as copies of malicious complaints they had sent to official bodies in a desperate attempt to cause harm to their careers.

105.    Defendants also threatened Miss X and Plaintiff verbally and physically, most notably making harassing phone calls, spreading dreadful rumors in the community, physically stalking, and even boasting about inflicting bodily harm on Miss X in one instance.

106.    Defendants' attacks lasted for months and were relentless, oftentimes with dozens of e-mails being sent round the clock on a single day.

**Defendants Initially Attempted to Harass Miss X and Plaintiff's Girlfriend into Turning Against Plaintiff**

107.    In or about mid-December 2023 and approximately five days prior to beginning their online campaign against Plaintiff, Defendants in particular Andy Jia Lun Shao manipulated his own friend Miss X to introduce herself to and meet with Plaintiff as a "mentee."

108.    Miss X had previously worked in another regional office of Plaintiff's employer, however during that time never met Plaintiff.  She later left the job and is currently pursuing a law degree in the U.S.

109.    Defendant Andy Jia Lun Shao saw this connection and eagerly suggested Miss X to reach out to Plaintiff by placing her under the impression that he would be a "great mentor" based on "what his wife had said about him."  He even provided Plaintiff's contact details to Miss X and made sure she reached out.

110.    Unsuspecting, Plaintiff accepted Miss X's invitation and met her in a chain coffee shop to offer career advice and guidance.

111.    To her shock, Miss X would later learn from Defendants that she had been part of their plan to portray Plaintiff as a monster, and that they had sent her to meet with Plaintiff so they could fabricate a story to accuse him of having behaved inappropriately with her during the meeting.

112.    Miss X was disgusted with Defendants' portrayal of Plaintiff and even more their attempt to use her to harm Plaintiff, since he had been nothing but sincere and respectful with her.

113.    Miss X made it clear to Defendants that she wanted no part in their scheme and that they should stop.

114.    Refusing to stop, Defendants repeatedly insinuated to Miss X that Plaintiff must have behaved inappropriately with her, and tried to intimidate her into falsely testifying against Plaintiff and corroborating Defendants' lies.

115.    Determined to poison those who supported Plaintiff against them, Defendants began bombarding Miss X as well as Plaintiff's girlfriend with more messages to continue to

portray Plaintiff as a monster, including claiming to have "evidence" but never sharing any, with the hope that Miss X and Plaintiff's girlfriend would cut ties with him.

**Defendants Later Retaliated Against Miss X for Whistleblowing**

116.    Approximately between January and March 2024, disgusted and horrified with Defendants' malicious intent and repeated harassment, Miss X and Plaintiff's girlfriend voluntarily contacted Plaintiff's and Defendant Vivian Jingyun Wang's employer on multiple occasions to provide them with information supporting their belief that Defendants were acting with malice.

117.    Defendants were furious and in denial that Miss X would let go of her friendship with Defendant Andy Jia Lun Shao and blow the whistle.

118.    Worse still, Defendants further tried to intimidate Miss X into retracting her whistleblowing report and discontinuing any further attempts to vindicate Plaintiff.   More specifically, on or around February 2, 2024, Miss X was contacted by Defendants using their Reporton[Plaintiff's initials]@gmail.com e-mail address, stating:

> People would think bad of you if they find you are a person who intentionally sent screencaps that your friends sent you out of trust to a company's HR department.   This is a betrayal to your friends.   **Please kindly let us know who is behind this.**   We won't keep the information out of [Plaintiff's employer]. Again, this email is a joint effort of all the victims of [Plaintiff]'s unprofessional behaviors.   Regards.

119.    Miss X replied to said e-mail firmly resisting Defendants' intimidation:

> Hi,
>
> 1.     The conversation between the internal department of [Plaintiff's employer] and me is highly confidential, and it is not proper to discuss this over any channel.
> 2.     Nobody is behind me/manipulating me on anything.   If I choose to deliver any kind of evidence, it is on my account
> 3.     I won't be replying to any of the emails from now on.   Please understand my position to step out of the whole situation.   If any more

emails are being fluxed into the [Miss X's law school e-mail system], I will report to the university IT department
4.      [Plaintiff] is a highly professional person, it is wrongful to make accusations against him behind the scenes
Regards,

**Defendants Attacked Miss X and Plaintiff out of Shame Rage After Their Scheme Had Failed**

120.    In or about late-February 2023, Defendants were grasping at straws as they learned their scheme to get Plaintiff terminated by his employer was about to fail.

121.    In or about March 2023, when it was generally known that Plaintiff was officially reinstated at work, people around Defendants including their friends and co-workers started to see the true picture and criticized their ugly intentions and behavior.

122.    Before long, Defendants spiraled into shame rage and took it out on Plaintiff as well as Miss X for interfering with their scheme to have Plaintiff terminated.

123.    To that end, Defendants registered multiple new e-mail accounts – namely AnoAnoAnoy2024@gmail.com,  AbeAbeeee834@gmail.com,  and AloAloooo9991@gmail.com – to mask their ongoing online harassment scheme.

124.    Defendants further widened their harassment by creating a mass e-mail distribution list – dubbed "undisclosed-recipients" – that contained official bodies from Miss X's law school and future employer as well as her friends and acquaintances around her.

125.    In the months that followed, Defendants hurled a series of relentless and highly calculated attacks at Miss X and Plaintiff.

126.    Defendant Andy Jia Lun Shao eventually began to physically harass Miss X as well since they both resided in the U.S.

127.    Defendants' attacks on Plaintiff and Miss X followed a number of recurring tactics, summarized herein along with supporting e-mail evidence.

128.    First, Defendants lied that Plaintiff was willing to betray and harm Miss X for his self-interests, hoping this would convince her to cut ties with Plaintiff:

| Approximate date | Visible recipients | Statements |
|---|---|---|
| Defendants' sender account: <u>AnoAnoAnoy2024@gmail.com</u> | | |
| March 17, 2024 | Miss X<br><br>Plaintiff | [Plaintiff] said if Vivian can delete all the INS, videos, etc., I can offer a condition to exchange.<br><br>This is my condition to him. He agreed to it.<br><br>To keep the promise, all the complaints against [Plaintiff] are forever stopped.<br><br>Thank you, [Miss X]. |
| March 17, 2024 | Miss X<br><br>Plaintiff | I'm more than happy to provide my chat history with [Plaintiff].  It is for your own good to stay away from a guy who used your safety in exchange for his career. |
| March 17, 2024 | Miss X<br><br>Plaintiff | [Falsified chat history claiming Plaintiff stated] "She is only a mentee that I'm unfamiliar with" and "You can do whatever you want"<br><br>I'm glad to share more if you want |
| March 17, 2024 | Miss X<br><br>Plaintiff | All of today's emails are sent only to you two.<br><br>These are only kind reminders - please do not collaborate to ruin others' reputations in the future. Thank you both.<br><br>To [Miss X] - Please only keep one thing in mind, will anyone who cares about you to get you involved in such case? |
| March 18, 2024 | Miss X<br><br>Plaintiff | I heard from one of my friends<br>a friend said he asked [Plaintiff] where [Miss X] is<br>he ignored this message just to keep him safe<br>I am more than happy to let my friend show the detailed message to you<br>today you guys have no conflict of interest<br>but you can see what he would do if you have |

| Defendants' sender account: AloAloooo9991@gmail.com | | |
|---|---|---|
| March 29, 2024 | Miss X<br><br>Plaintiff | 1. 到目前为止，除了他之外，有人想让你卷入这种风波吗？<br><br>2. 背叛自己朋友，为了给你举手之劳的改改essay? are you serious? 他有什么实际成本？<br><br>3. 我相信你很聪明，你应该能感觉到一个人对你真诚与否<br><br>4. I am ok for talk any time. |

129.    Second, Defendants accused Miss X of having inappropriate romantic feelings for Plaintiff and insulted the chastity of each one of them in front of the other, hoping to alienate them:

| Approximate date | Visible recipients | Statements |
|---|---|---|
| Defendants' sender account: <u>AnoAnoAnoy2024@gmail.com</u> | | |
| March 17, 2024 | Miss X<br><br>Plaintiff | 你告诉我值得吗？为一个认识三个月见了不超过三次面的人<br>你是想回[Plaintiff's employer]还是想做IBD？你告诉我他能给你什么好处？<br>junior ED能把你refer进什么纽约的律所吗？<br>为了他不停地折腾我们 like why<br>你是喜欢他吗？你喜欢他什么你告诉我？<br>你是怀孕了还是觉得他床上功夫好还是觉得他有钱？ |
| Defendants' sender account: <u>AbeAbeeee834@gmail.com</u> | | |
| March 21, 2024 | Plaintiff | a [Plaintiff's employer] ED and a law student who's 10 years younger I will find a way |
| March 24, 2024 | Miss X<br><br>Plaintiff | I sent all your 黑历史 to him today<br><br>If he doesn't mind then ok<br><br>算是这件事里唯一的一件好事<br><br>祝你们都好<br><br>邮箱注销了 |
| March 25, 2024 | Plaintiff | she really loves u<br>i guarantee u |
| March 26, 2024 | Miss X<br><br>Plaintiff | Hey both<br><br>can you confirm if [Miss X] is not pregnant?<br><br>If she is, let me know, I won't do anything to her<br><br>I have baseline of consciousness |

| Defendants' sender account: AloAloooo9991@gmail.com | | |
|---|---|---|
| April 2, 2024 | Miss X<br><br>Plaintiff | Dear,<br><br>1. [Plaintiff] in the office, according to a HK IPO Doc team member, never replied to any email from HK IPO Doc Team. He thought every email written by this team was meaningless and threw all the tasks to [Plaintiff's co-worker], another junior colleague. He openly dismisses back office such as legal team.<br><br>2. According to a [Plaintiff's employer] ex-employee, [Plaintiff] now moved into the apartment of his girlfriend's and planned to visit Henan Province, his girlfriend's hometown, with his girlfriend during Qing Ming Festival.<br><br>We think your efforts to help him are not worth it, even at the cost of betraying your friends.<br><br>We would like to have a chat with you. If you are ok, this can be done face to face and with your familiar people joining. We can also keep you posted on the progress of [Miss X's school].<br><br>Girls help girls.<br><br>Regards. |
| April 2, 2024 | Miss X<br><br>Plaintiff | No.1 can be verified if you talk to [Plaintiff's co-worker]. No.2 is from a credible resource. To add on, [Plaintiff] drove his girlfriend everywhere. As far as we know, you took the subway in New York City for your interviews, knowing the MTA in NYC is pretty dangerous.<br><br>Girls help girls. |

| April 7, 2024 | Miss X<br><br>Plaintiff | I kept my promise to you<br><br>he is perfectly ok now<br><br>I hope you get what you want now<br><br>you know he is in Henan with his gf right?<br><br>Do you feel worth it?<br><br>How many essays should be edit for such exchange<br><br>撑不下去随时找我 只要告诉我发生了什么 诚实一点 一笔勾销 |
| April 8, 2024 | Plaintiff | It is spotted that [Miss X] was in a guy's arms, crying silently in front of a library of [Miss X's school] around 5am…the witness said the guy and [Miss X] opened their laptop in the library for all night |

130.    Third, Defendants published multiple serious complaints against Miss X, firstly to her law school and future legal employer to harm her career prospects, and secondly among her social community to humiliate her.  Just like those about Plaintiff, these complaints against Miss X were serious, sensational, and yet unsubstantiated.  They attacked her academic, professional, and ethical integrity, including accusing her of unchaste behavior such as cheating on her ex-boyfriend and of having unprotected, one-night-stand sex with Plaintiff resulting in accidental pregnancy:

| Approximate date | Visible recipients | Statements |
|---|---|---|
| Defendants' sender account: <u>AnoAnoAnoy2024@gmail.com</u> | | |
| March 17, 2024 | "undisclosed-recipients" distribution list<br><br>Plaintiff | Dear [Miss X's law school],<br><br>We would like to jointly report against [Miss X's] behaviors. Per our knowledge, [Miss X] is a 1L law student at [Miss X's law school]. The School oversights all her academic and ethical issues.<br><br>- [Miss X], while applying for other schools, used inappropriate references in her application essays, including but not limited to AI help and mentorship<br><br>- [Miss X], used outline depot, a school-forbidden website to buy outlines for school midterms and final exams<br><br>- [Miss X], while in a relationship, continuously cheats on her boyfriend. The guy was then diagnosed with mental issues<br><br>All the above can be verified. We can keep a close touch with the school on necessary follow-ups.<br><br>With Regards. |
| March 17, 2024 | "undisclosed-recipients" distribution list<br><br>Plaintiff | All the below accusations are accurate and verifiable. If the school does not reach a proper outcome, we will consider submitting all the below and relevant evidence to the American Bar Association. Per our knowledge, bar passage is a critical factor in law school admission assessment.<br><br>We will be waiting for university updates. Thank you. |

| March 17, 2024 | Plaintiff | Dear HR department of [Miss X's future employer],

Please take this as a formal complaint letter against Miss [Miss X], a 1L law student at [Miss X's law school], who is an offer holder of the summer associate position at your prestigious firm.

Understanding the importance of the integrity of lawyers, this letter would like to point out that [Miss X], while at university, used Outline Depot, a strictly forbidden website for law school students to take inappropriate advantages in midterms and finals.

In addition, [Miss X] cheated in her relationship, which caused strong mental health issues for her ex-boyfriend, who is also an alumnus of [Miss X's law school].

We urge an investigation to be performed against such behavior.

With Regards. |
| Defendants' sender account: AbeAbeeee834@gmail.com | | |
| March 28, 2024 | Miss X

Plaintiff | The official complaint letter has been issued to [Miss X's law school] today with evidence attached.

The same copy was sent to [Miss X's] ex-boyfriend, and more for you to discover.

This is a notice for investigation only, and all evidence is accurate. The goal is to urge the university to start an investigation, but not to defame. |

| Defendants' sender account: <u>AloAloooo9991@gmail.com</u> | | |
|---|---|---|
| March 30, 2024 | Miss X<br><br>Plaintiff | I received email from [Miss X's law school] just now<br><br>the team fairly said 'the university took such accusations seriously and will start committee hearings with the student, if possible, will invite you to join one of the hearing'<br><br>I will go<br><br>and I will show everything |
| March 31, 2024 | Miss X<br><br>Plaintiff | I'd be happy to forward you the invitation from [Miss X's law school] on inviting me to your hearing<br><br>But anyway, youcan't see<br><br>Good luck both |
| April 1, 2024 | Miss X<br><br>Plaintiff | See you tomorrow! |
| April 1, 2024 | Miss X<br><br>Plaintiff | I will be attending the hearing in [Miss X's law school] at 10am tomorrow<br><br>Let me know if anything you want to talk about Also<br><br>Rumor from [Plaintiff's employer]: [Plaintiff] is living in a very very good life, happy to share more with you |
| April 2, 2024 | Miss X<br><br>Plaintiff | [Miss X's school] said it will inform me of the decision in 3 days<br><br>good luck girl<br><br>again I'm ok for talk anytime<br><br>see who treats u better |

| April 7, 2024 | Miss X<br><br>Plaintiff | I received email from [Miss X's law school]  today<br><br>You wanna see?<br><br>Good luck girl |
|---|---|---|
| April 7, 2024 | "undisclosed-recipients" distribution list<br><br>Plaintiff | Dear Disciplinary Committee of [Miss X's law school],<br><br>Please find below additional complaints against [Miss X], a 1L law student at your prestigious institution.<br><br>- [Miss X] participated in an internal investigation process of her ex-employer, [Plaintiff's employer], and twisted private chat history with her friends to support one of the parties for the exchange of unknown benefits, according to a credible resource<br><br>- [Miss X], after ending the relationship with her ex-boyfriend, maintained a frequent-than-proper relationship with her ex-boyfriend, calling him multiple times during midnights<br><br>- [Miss X] illegally signed two contracts separately with two law firms for her summer internship, occupying valuable internship opportunities that other students may otherwise obtain<br><br>All the above can be verified with supporting witnesses/evidence. Therefore, a proper investigation against [Miss X] is legitimately requested.<br><br>With Regards. |

| April 7, 2024 | "undisclosed-recipients" distribution list  Plaintiff | Upon hearing from more witnesses, we would like to add on below:<br>-    [Miss X] intruded into others' relationships while knowing her ex already had a new girlfriend<br>-    [Miss X] tried to rent her dormitory during summer break without prior notice to the university<br>-    [Miss X] invited strangers (not university students or staff) to her dormitory<br>-    [Miss X,] while interning at [banking institution] in 2018, ended her internship earlier than required by contract, causing big trouble to her team at the time<br>-    [Miss X] used piracy edition textbooks and required readings multiple times, breaching US IP law<br>We would like to thank the university in advance for conducting a proper investigation.<br>Regards. |
|---|---|---|
| April 7, 2024 | "undisclosed-recipients" distribution list  Plaintiff | Upon sending the below two complaints letters, we immediately received other complaints from other witnesses:<br><br>- [Miss X] used Quimbee, another university-forbidden study resource for law students to take advantage in midterms and finals<br><br>- [Miss X] used paid VPN (not the [Miss X's] law school's] VPN) in mainland China, breaching national internet regulations<br><br>- [Miss X] asked senior classmates to edit her essay for her, without noticing the university writing center |
| April 7, 2024 | "undisclosed-recipients" distribution list  Plaintiff | Dear friends,<br><br>I have received testimonies from witnesses that [Miss X]  had a one-night stand with [Plaintiff] when [Plaintiff] rejected her blatantly and openly. It is reasonably doubtful whether such behavior shows a fitness for the legal profession.<br><br>Regards. |

| April 8, 2024 | "undisclosed-recipients" distribution list  Plaintiff | Ladies and Gentlemen,  We have received additional information that [Plaintiff] openly and blatantly rejected [Miss X], however, [Miss X] insisted on a one-night stand. Later [Miss X] got pregnant and asked [Plaintiff] to come back to China. [Plaintiff] still rejected her even after this. The whole story was like a joke within their company.  We will verify the authenticity of this story, and let you know the real personality of [Miss X].  Regards. |

131.    Fourth, in addition to pouring lies, insults and complaints on Miss X, Defendants took their harassment to an even more dangerous level by physically stalking her. Sadistically, Defendants would concurrently boast to others about the harm they inflicted on Miss X, and in one instance even boasted about causing bodily harm to her. Defendants further leveraged the terror they imposed on Miss X to offer her "deals" where she had to corroborate their lies, retract her whistleblowing reports, and stop vindicating Plaintiff in exchange for peace:

| Approximate date | Visible recipients | Statements |
|---|---|---|
| Defendants' sender account: AnoAnoAnoy2024@gmail.com | | |
| March 17, 2024 | Plaintiff | How's her legs? Please tell her to be careful when going to traffic. I wish her all the best on her recovery. |
| March 17, 2024 | Plaintiff | 我不觉得她的心智有你的强 她既然这么说了 你这边所有全部over，我们保证 let's see 她可以撑多久 |
| March 17, 2024 | Plaintiff | 哈哈，已经KO 你看看她还有力气回消息吗 |

| | | |
|---|---|---|
| March 17, 2024 | Plaintiff | Let's end everything here<br>I will ask for all evidence to be deleted<br>一个25岁妹子用命给你换的<br>希望你继续高枕无忧 |
| March 17, 2024 | Miss X<br><br>Plaintiff | You can stop whenever you want<br>Just give me a promise that you won't be collaborating with him<br>And tell me what he made you do |

| Defendants' sender account: <u>AbeAbeeee834@gmail.com</u> |
|---|

| | | |
|---|---|---|
| March 21, 2024 | Plaintiff | I'm at [Miss X's law school] now<br>Let's see if you can talk to her tomorrow<br>I will try to persuade her<br>but if you cannot, don't blame me |
| March 21, 2024 | Plaintiff | Done!! Hahaha So easy! |
| March 23, 2024 | Miss X<br><br>Plaintiff | I came to HK today to find him<br><br>Let's see<br><br>If you don't want it to happen, call me directly, please, you have my number<br><br>I will keep it confidential between you and I |
| March 29, 2024 | Plaintiff | she will never talk to u<br>i assure u<br><br>multiple efforts but worth it |

| Defendants' sender account: <u>AloAloooo9991@gmail.com</u> |
|---|

| | | |
|---|---|---|
| March 30, 2024 | Miss X<br><br>Plaintiff | 我说了，我不怪你，你过来真诚地告诉我发生了什么就好<br><br>不要再defer progress了<br><br>拿你自己换这个不值得 |

| March 30, 2024 | Miss X<br><br>Plaintiff | I invite [Miss X's ex-boyfriend] for a meeting also<br><br>and I have more to do<br><br>If you cannot stand at any time, again , feel free to come to me<br><br>I'm not angry at you<br><br>I just want truth<br><br>Tell me what happened, it all stop |
|---|---|---|
| March 30, 2024 | Miss X<br><br>Plaintiff | It's a favor for you<br><br>**我当帮你一个忙**<br><br>**我给你看看 他会不会管**<br><br>or<br><br>**真出事的**话他是不是安心做他ed<br><br>again<br><br>if you cannot stand, feel free to talk<br><br>I just want truth<br><br>all will stop as long as you are honest to me |
| April 5, 2024 | Miss X<br><br>Plaintiff | Are you ok? |
| April 5, 2024 | Miss X<br><br>Plaintiff | Guess you are not |
| April 7, 2024 | Miss X<br><br>Plaintiff | 撑不下下去随时来找我 |

| April 7, 2024 | Miss X<br><br>Plaintiff | 我一共给committee发过四次不同的complaint<br><br>只有一次抄送了[Plaintiff] 和你<br><br>其他三次你可以等被找了再看是什么<br><br>撑不下去随时来找我 |

132.    On multiple occasions, Defendants would send Plaintiff and Miss X unprompted e-mails promising a détente but would then resume their attacks all but immediately thereafter.

133.    For instance, Defendants sent the below e-mail to Plaintiff on or about March 18, 2024 using their AnoAnoAnoy2024@gmail.com e-mail address, telling him that they would "end everything here and disappear from his life" and wishing him "all the best," but then resumed with their attacks a few days later and throughout the month of March 2024 using their AbeAbeeee834@gmail.com e-mail address:

我本来想打给你的，现在觉得还是写信吧

其实你很清楚发生过什么

一切都结束吧，大家都不会再出现在对方世界里了

是[Miss X]让我想通的，她很真诚

她的记录我全删了，只是最后想补偿你们一下

所以冒着"不得好死"也发给你了，发完就删了，我不会辜负她的信任

君子论迹不论心，论心世上无完人

祝你一切都好！

134.    In another instance, Defendants sent the below e-mail to Miss X and Plaintiff on or around March 31, 2024 using their AloAloooo9991@gmail.com e-mail address, telling them that "nothing will happen" and "good luck," but then the harassment resumed just a few minutes thereafter and continued through early April of 2024, this time without even changing the e-mail address:

> Hi Both
>
> Apologize for before! Let;s stop everything
>
> I will follow up with [Miss X's law school]
>
> But besides that nothing will happen
>
> Given [Miss X] won't be able to reply already
>
> This is fair enough
>
> Good luck [Plaintiff] and [Miss X]
>
> At least you two should thank me for knowing each other
>
> [Miss X]: I believe you know what he has done. This is your own choice then. I still treat you as my friend. And I believe the girl, who I pick up from airport in 2019, is a good one

**Defendants' Allegations Are Categorically False and Published with Actual Malice**

135.    Defendants' allegations about Plaintiff are categorically false and designed to lead others to believe he is a workplace predator, tarnishing his career and reputation.

136.    Desperate to create a false impression of having "evidence," Defendants materially misrepresented facts and communications involving Plaintiff.

137.    For instance, in the first blast e-mail sent to Plaintiff and a wide audience at his employer, Defendants claimed Plaintiff "on numerous occasions, had made inappropriate jokes in the office and during meetings with juniors such as 'This is as big as I can get'..."

138.    To clear his name, Plaintiff went through his records and located a text message sent to a male colleague "This is as big as **it** can get.." (emphasis added) in the context of responding to his request to enlarge the virtual presentation screen during a project meeting.



139.    At the time, Plaintiff had communicated this situation to Defendant Vivian Jingyun Wang who was the Associate of said project and generally responsible for controlling presentation logistics.

140.    Not only did Defendants deliberately misstate Plaintiff's quote, but they also removed all necessary context to twist an innocuous statement into "evidence" to support their false allegations against Plaintiff.

141.    The absence of any real evidence supporting their claims is only further highlighted by e-mails sent *thereafter* in search of supporting information.

142.    For instance, Defendants first blasted an e-mail on or about February 21, 2024 claiming that "[Plaintiff] forced the victim to have unprotected sex and refused to take any responsibility for the foreseen consequences[.]"  However, *more than a month later* on or about

March 26, 2024, Defendants e-mailed Plaintiff and Miss X to ask if she was pregnant[1], which clearly demonstrates Defendants did not know whether Miss X was pregnant *at the time* of the blast.

143.    Notably, Plaintiff and Miss X have never been intimate, a fact which has been relayed to Defendants by Miss X on multiple occasions, for example, in her e-mail reply in or around February 2, 2024 where she reiterated Plaintiff was a "highly professional person."

144.    Despite this, on or about April 8, 2024, Defendants again knowingly misrepresented to multiple third parties that Miss X was pregnant with Plaintiff's child.

145.    Clear from the foregoing, not only are Defendants' allegations categorically false, but they are also made with actual malice and reckless disregard for their falsity.

**Plaintiff Has Suffered Devastating, Worldwide Harm to His Reputation and Career and Continues to Live in Unease**

146.    Defendants blanketed Plaintiff's organization on a worldwide basis including its Group Chairman and CEO in the U.S. – and dozens of members of major U.S. press firms – with numerous false accusations with which his name will now forever be associated.

147.    Defendants further arranged for a copy of the first blast e-mail – alongside Plaintiff's LinkedIn profile including his professional portrait – to be uploaded to one of the largest social media platforms, RED, via a leak post that garnered more than 19,000 views.

148.    Defendants' statements spread so widely that individuals with whom Plaintiff had not spoken to years contacted him to learn more about his situation.

---

[1] "Hey both…can you confirm if [Miss X] is not pregnant?...If she is, let me know, I won't do anything to her…I have baseline of consciousness[.]"

149.    Plaintiff further suspects, reasonably, that many more third parties and peers read the allegations on the leak post on RED, believed them, and were not interested in hearing his side of the story.

150.    Plaintiff has been severely and irreparably harmed by Defendants' false allegations, which have reverberated throughout his workplace and the finance and related industries – in Hong Kong, other parts of Asia, the U.S. and Europe, at a minimum – reaching not only his co-workers but also clients and competitors.

151.    Defendants' allegations also compelled his employer to place him on administrative leave in accordance with its standard global policy.  While he was on leave, Plaintiff was not able to interact with colleagues or clients and missed out on numerous transactions and projects.  As a result, Plaintiff lost out on many job opportunities with which he would have otherwise been involved.

152.    Regardless of his employer's decision to reinstate Plaintiff, Defendants' statements will be the last word that many e-mail recipients hear on this matter and, inevitably, many third parties will believe the statements contained in the e-mails.

153.    Notably, Plaintiff was lucky to have made such a positive impression on former junior colleagues that 28 of them – who noticed the leak post on RED – felt compelled to take the initiative to write and sign a joint statement to support him which they then sent to the top management of Plaintiff's employer.

154.    The letter was signed by a comprehensive group of 28 individuals who had worked beneath Plaintiff over the past more than seven years and indicated that the undersigned had never experienced behavior even vaguely similar to the types described in Defendants' first blast e-mail, and that Plaintiff maintained his professionalism at his job.

**Joint Statement for [redacted] by 28 Ex-[redacted] Junior Colleagues**

Dear [redacted] Management and HR team,

We are a group of **ex-[redacted] junior employees** that [redacted] has worked with during the period from when he joined [redacted] in 2016 to year-end 2023.

It has come to our attention that [redacted] has been subject to an anonymous complaint dated December 20, 2023 sent by a Gmail account with email address at "[redacted]@gmail.com" (the "Anonymous Complaint"). A screenshot of the Anonymous Complaint is attached. The Anonymous Complaint along with [redacted]'s personally identifiable information was posted on Chinese social media platform Xiaohongshu on December 21, 2023, and was subsequently taken down as the content of the post was regarded by Xiaohongshu as a violation of its platform rules and an infringement of [redacted]'s rights. A copy of the response from Xiaohongshu is also attached for your reference. The Anonymous Complaint purportedly claims to be a "joint effort" by a group of [redacted] employees and alumni.

We have recently heard that [redacted] is currently undertaking an investigation of the matters alleged in the Anonymous Complaint. To facilitate such process, we would like to draw your attention to the following:

- We are **not involved**, whether directly or indirectly, in the Anonymous Complaint
- During our respective time working with [redacted] [redacted] has maintained professionalism at his job. He **did not** leverage his power to ask for favours from us, be it sexual or otherwise;
- During our respective time working with [redacted] [redacted] **did not** demonstrate any behaviours of sexual harassment nature toward any of us;
- We **did not** hear of any rumours of [redacted] being involved in harassment and/or power abuse incidents;
- We **did not** hear of any discriminative comments against China and/or Henan from [redacted]; and
- Based on our understanding of his personality, it would be **uncharacteristic** of [redacted] to conduct unprofessional behaviours as described in the Anonymous Complaint

We hope that the above would assist both Management and the HR team to consider the matters alleged in the Anonymous Complaint.

Yours sincerely,

155. Unfortunately for Plaintiff, not everyone who received Defendants' e-mails or read their claims on RED is aware of the existence of this statement. For many, Defendants' statements may very well be the first and last thing they learn about Plaintiff, and they may still be fully unaware that Defendants' statements were false.

156. In addition to the reputational and career damage and frustration of being represented to third parties as an unethical, disloyal, unprofessional individual, Defendants have also caused Plaintiff to fear and continue to fear for his own safety.

157.    More specifically, Defendants have, on multiple occasions, boasted about their willingness and capacity to cause Miss X and Plaintiff bodily harm and, in one instance, stated they were responsible for a car striking Miss X.

158.    Worse still, Defendant have in the past e-mailed Plaintiff to threaten him that they had travelled to Hong Kong to find him.

159.    Defendants have also demonstrated a proven history of pathological, relentless desire to harm Plaintiff.  In or about late-February 2023, just when Plaintiff thought this malicious scheme would finally be over with him being reinstated at work after months of harassment, he stood painfully corrected as Defendants would continue with their harassment – and in a wildly escalated fashion – for more months to come.

160.    Ultimately, knowing Defendant Andy Jia Lun Shao has a history of dangerous behavior, including being arrested in the U.S. for "Battery Touch or Strike[,]" Plaintiff  continues to live in unease to the present day.



**Jia Lun Shao**
Arrest Age 23
Fort Myers, Lee, FL
**More Information >>>**

Arrested Oct 31, 2016
• battery (touch or strike) -domestic violence

## **FIRST CAUSE OF ACTION**
### **(Defamation)**

161.    Plaintiff repeats and realleges the allegations stated above as if fully set forth herein.

162.    Information provided by third parties, including Google, Verizon and T-Mobile, as well as details indicated above unequivocally demonstrate that Defendants disseminated or caused to be disseminated via e-mail and social media information about Plaintiff which is false and defamatory and not the subject of any privilege.

163.    The allegations Defendants made about Plaintiff were widely published and viewable by many third parties as the e-mails were often sent to dozens of individuals. Additionally, in at least one instance, Defendants subsequently uploaded their e-mail onto a social media site where it was publicly viewable.

164.    Defendants had actual knowledge that the information they published, or caused to be published, about Plaintiff was false and knew or should have known that the information published about Plaintiff was false and defamatory.

165.    Defendants acted with knowledge of the falsity of these statements and the implications therefrom, reckless disregard for the truth, and/or with malicious intent, both presumed and actual, in knowingly disseminating and/or causing to be disseminated the statements.

166.    The statements made by Defendants were of and concerning Plaintiff and defame and otherwise impugn Plaintiff's character, integrity, professionalism and reputation.

167.    Defendants knew the statements being made were false when they made them and/or made them with reckless disregard for their falsity and/or acted negligently in failing to ascertain the falsity of the statements before communicating them.

168.    Defendants' statements were serious, descriptive, precise and readily understood, and were presented clearly as fact, not opinion, and were designed and sent with the intent of causing third parties to believe the allegations and act upon them in a manner that would cause Plaintiff harm.

169.    The statements were made with the intent to harm Plaintiff and with actual malice.

170.    The Defendants' unlawful conduct has caused and will continue to cause Plaintiff imminent, irreparable injuries for which there are no adequate legal remedies.  Accordingly, Plaintiff is entitled to permanent injunctive relief.

171.    Because Defendants have placed Plaintiff's personal character and reputation publicly at issue, Plaintiff is entitled to a declaratory judgment that Defendants' statements are false.

172.    As a consequence of the Defendants' conduct, Plaintiff's reputation has been injured, and the Plaintiff has suffered economic loss.

173.    That by reason of the foregoing, Plaintiff has been damaged in a sum of money having a present value which exceeds the jurisdictional limits of all lower courts which would have otherwise have jurisdiction of this matter.

## SECOND CAUSE OF ACTION
### (Defamation Per Se)

174.    Plaintiff repeats and realleges the allegations stated above as if fully set forth herein.

175.    Defendants' statements charge Plaintiff with serious crimes and ethical violations and disparage him in his profession, trade, and/or business.  Such allegations are libelous per se.

176.    The statements are libelous per se, so that general damages may be presumed as a matter of law.

177. Defendants' statements were made with the intent to harm Plaintiff and with actual malice.

178. That by reason of the foregoing, Plaintiff has been damaged in a sum of money having a present value which exceeds the jurisdictional limits of all lower courts which would have otherwise have jurisdiction of this matter.

### THIRD CAUSE OF ACTION
### (False Light Invasion of Privacy)

179. Plaintiff repeats and realleges the allegations stated above as if fully set forth herein.

180. Plaintiff had an interest in not being made to appear before the public in an objectionable false light or false position, or in other words, otherwise than he is.

181. Despite Plaintiff's interest, Defendants publicized information about Plaintiff's private life, specifically information – albeit false – about his romantic affairs and professional ethics by sending blast e-mails to dozens of Plaintiff's colleagues, members of the press, and Plaintiff's girlfriend as well as, on one occasion, sharing said e-mail publicly on a social media platform.

182. The allegations made by Defendants have the capacity to give rise to a false public impression of Plaintiff.

183. The allegations Defendants made about Plaintiff so misrepresented Plaintiff's character, history, activities, or beliefs that a reasonable person in Plaintiff's position would find the material highly offensive.

184. Defendants' sharing of the information was done in a manner that made the content substantially certain to become public knowledge.

185.    In sharing such information, Defendants gave publicity to a matter concerning Plaintiff which was false.

186.    Defendants either knew the publicized information was false and would place Plaintiff in a false light or acted with a reckless disregard as to whether it was false and would create a false impression.

187.    Defendants' e-mails were the cause of Plaintiff's injuries, damages, and losses.

188.    As a result of Defendants' actions, Plaintiff demands judgment for any actual damages which exceeds the jurisdictional limits of all lower courts which would have otherwise have jurisdiction of this matter, together with damages for pain and suffering and punitive damages, attorney's fees, costs of this litigation and such other relief as the Court deems equitable and just.

## FOURTH CAUSE OF ACTION
### (Publicity Given to Private Life)

189.    Plaintiff repeats and realleges the allegations stated above as if fully set forth herein.

190.    Defendants publicized matters relating to Plaintiff's private life which would be highly offensive to a reasonable person and which are not of legitimate concern to the public.

191.    Such information includes, but is not limited to, information about his relationship with his girlfriend, including details about her family life.

192.    Defendants did not have Plaintiff's permission to publicize the information shared.

193.    Defendants' dissemination of the information was the cause of Plaintiff's injuries, damages, and losses.

194.    As a result of Defendants' actions, Plaintiff demands judgment for any actual damages which exceeds the jurisdictional limits of all lower courts which would have otherwise

have jurisdiction of this matter, together with damages for pain and suffering and punitive damages, attorney's fees, costs of this litigation and such other relief as the Court deems equitable and just.

## FIFTH CAUSE OF ACTION
### (Aiding and Abetting Defamation)

195.    Plaintiff repeats and realleges the allegations stated above as if fully set forth herein.

196.    Defendant Vivian Jingyun Wang requested that Defendant Andy Jia Lun Shao write and publish false and defamatory statements about Plaintiff.

197.    Defendant Andy Jia Lun Shao requested that Defendant Vivian Jingyun Wang write and publish false and defamatory statements about Plaintiff.

198.    Each party recognized and understood that the other was providing substantial assistance in defaming Plaintiff and furthering their general scheme to cause him personal and reputational harm.

199.    From the inception of their plan to current day, Defendants understood the allegations they were making about Plaintiff were false and made them for the sole purpose of causing him harm.

200.    As a result of Defendants' actions, Plaintiff demands judgment for any actual damages which exceeds the jurisdictional limits of all lower courts which would have otherwise have jurisdiction of this matter, together with damages for pain and suffering and punitive damages, attorney's fees, costs of this litigation and such other relief as the Court deems equitable and just.

## SIXTH CAUSE OF ACTION
### (Tortious Interference with Contract/Prospective Economic Advantage)

201.    Plaintiff repeats and realleges the allegations stated above as if fully set forth herein.

202.    Plaintiff is an esteemed financial professional working in a highly competitive industry.  Defendants both work in the same industry, with Defendant Vivian Jingyun Wang previously working alongside Plaintiff in the same office.

203.    Accordingly, Defendants are well aware of the internal politics which come into play following allegations of sexual and professional improprieties and the devastating impacts both types of allegations can have on one's career.

204.    Additionally, because of Defendant Vivian Jingyun Wang's familiarity with the structure of Plaintiff's workplace, she had access to the names of personnel who were in the best position to harm Plaintiff's career as well as contact information for same.

205.    Using this information, as well as general information about the finance industry, Defendants chose to contact members of the press, specific members of Plaintiff's employer, and other individuals who were in a position to cause the most harm to Plaintiff's career.

206.    During their campaign of harassment against Plaintiff, Defendants engaged in numerous wrongful means, including criminal conduct, threats of physical violence, misrepresentation, and economic pressure that exceeded simple persuasion.

207.    Defendants' goal was to negatively impact Plaintiff's career and overall trajectory at work.  Following their reign of harassment, Plaintiff's employer, acting according to its standard global policy, launched an investigation into the allegations and placed Plaintiff on customary administrative leave until the investigation was completed.

208.    While he was on leave, Plaintiff was not able to interact with colleagues or clients and missed out on numerous transactions and projects.  As a result, Plaintiff lost out on many job opportunities with which he would have otherwise been involved.

209.    Upon information and belief the disruption caused by Plaintiff's absence, as well as the lingering impacts of Defendants' defamation, has negatively impacted Plaintiff's career and caused him to miss out on career opportunities as well as prospective financial incentives at work which he otherwise would have received if not for Defendants' bad acts.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in his favor and against Defendants, containing the following relief:

A.    Injunctive relief against Defendants in the form of a restraining order from this court against them preliminarily and permanently restraining them from:

1.    Posting information relating to Plaintiff on social media sites;

2.    sending e-mails, text messages, WhatsApp messages, or any communication via electronic, fax, telephone or any other means, containing information or images relating to Plaintiff to Plaintiff, his girlfriend, employer, friends or associates, colleagues, or members of the press;

B.    Damages for tortious acts committed by Defendants in an amount to be determined at trial, including compensatory damage in an appropriate amount, for injury resulting from loss of business and networking opportunities, emotional distress, and loss of reputation due to Defendants' words; punitive damages in an appropriate amount, for the intentional, reckless, and negligent nature of Defendants' conduct to deter them from further such conduct; interest, costs,

and reasonable attorneys' fees incurred by Plaintiff in commencement of this action; any other

such further relief as the court deems just and proper.

Dated: New York, New York
        October 21, 2024

                                 Respectfully submitted,

                                 **Daniel Szalkiewicz & Associates, P.C.**

                                 */s/ Daniel Szalkiewicz*
                                 By:    Daniel S. Szalkiewicz, Esq.
                                          Cali P. Madia, Esq.
                                 23 West 73rd Street, Suite 102
                                 New York, NY 10023
                                 Telephone: (212) 706-1007
                                 Facsimile: (646) 849-0033
                                 daniel@lawdss.com
                                 *Attorneys for Plaintiff*

# American Education & Translation Services (AET)

# CERTIFIED TRANSLATION

## AFFIDAVIT OF TRANSLATION OF FOREIGN DOCUMENT

I hereby swear, under the penalty of perjury, that I am competent in both Chinese and English. I further certify that the attached is, to the best of my knowledge and belief, a true and accurate translation into English of the content (s) in Chinese.



Jennifer Chang, Chinese Translator

American Education and Translation Services (ATA#: 249353)

*American Education & Translation Services (AET) is a registered corporate member of the American Translators Association (ATA). AET's number with ATA is 249353. In terms of document translation, our duty is to offer precise translation solely based on the attached copies of original documents. The client will be fully responsible for the authenticity of those copies. Please be advised that all pages prepared by AET and the copies of original documents must bear our corporate stamp. If you have any questions regarding our translation, please don't hesitate to contact us at your earliest convenience.*

On this  October 17, 2024 , before me, the undersigned Notary Public, personally appeared Jennifer Chang   (name of document signer), known to me to be the person whose name is signed on the preceding or attached document in my presence.



Official signature and seal of Notary Public

County of Middlesex, State of Massachusetts

**American Education and Translation Services (NAFSA#: 238569, ATA#: 249353)**
Website: www.americantranslationservice.com
Boston Office: 6 Pleasant Street, Suite 418, Malden, MA, 02148  /  (781)605-1970/(781)712-0258 / boston@americantranslationservice.com
NYC Office: 60-20 Woodside Ave, Suite 205, Queens, NY11377  /  (718)521-6708/ 917-970-0588   /  nyc@americantranslationservice.com

**Paragraph 129: Original**

| March 29, 2024 | Miss X<br><br>Plaintiff | 1. 到目前为止，除了他之外，有人想让你卷入这种风波吗？<br><br>2. 背叛自己朋友，为了给你举手之劳的改改 essay? are you serious? 他有什么实际成本？<br><br>3. 我相信你很聪明，你应该能感觉到一个人对你真诚与否<br><br>4. I am ok for talk any time. |

**Paragraph 129: English Translation**

| March 29, 2024 | Miss X<br><br>Plaintiff | 1. Up till now, besides him, has anyone tried to involve you in this mess?<br><br>2. Betray your friends just to have them make a quick edit on your essay? Are you serious? What's the actual cost to him?<br><br>3. I'm sure you're smart enough to sense whether someone is being sincere or not.<br><br>4. I am ok to talk any time. |



**American Education and Translation Services** (NAFSA#: 238569, ATA#: 249353)

Website: www.americantranslationservice.com
Boston Office: 6 Pleasant Street, Suite 418, Malden, MA, 02148   /   (781)605-1970/(781)712-0258 / boston@americantranslationservice.com
NYC Office: 60-20 Woodside Ave, Suite 205, Queens, NY 11377   /   (718)521-6708/ 917-970-0588   /  nyc@americantranslationservice.com

**Paragraph 130(1): Original**

| March 17, 2024 | Miss X<br><br>Plaintiff | 你告诉我值得吗？为一个认识三个月见了不超过三次面的人<br>你是想回[Plaintiff's employer]还是想做 IBD？你告诉我他能给你什么好处？<br>junior ED 能把你 refer 进什么纽约的律所吗？<br>为了他不停地折腾我们 like why<br>你是喜欢他吗？你喜欢他什么你告诉我？<br>你是怀孕了还是觉得他床上功夫好还是觉得他有钱？ |

**Plaintiff 130(1): English Translation**

| March 17, 2024 | Miss X<br><br>Plaintiff | Is it worth it for someone you've known for merely three months and met not more than three times? Tell me!<br>Do you want to go back and work for [Plaintiff's employer], or do you want to be in IBD [Investment Banking Department]? Tell me what he can offer you?<br>Can Junior ED refer you to any NYC law firms?<br>You have been messing with us for him, like why?<br>Do you like him? What do you like about him? Tell me.<br>Are you pregnant, or do you think he's great in bed or he is rich? |



**American Education and Translation Services (NAFSA#: 238569, ATA#: 249353)**
Website: www.americantranslationservice.com
Boston Office: 6 Pleasant Street, Suite 418, Malden, MA, 02148   /   (781)605-1970/(781)712-0258  /  boston@americantranslationservice.com
NYC Office: 60-20 Woodside Ave, Suite 205, Queens, NY 11377   /   (718)521-6708/ 917-970-0588   /   nyc@americantranslationservice.com

**Paragraph 130(2): Original**

| March 24, 2024 | Miss X<br><br>Plaintiff | I sent all your 黑历史 to him today<br><br>If he doesn't mind then ok<br><br>算是这件事里唯一的一件好事<br><br>祝你们都好<br><br>邮箱注销了 |
|---|---|---|

**Paragraph 130(2): English Translation**

| March 24, 2024 | Miss X<br><br>Plaintiff | I sent all your dark past to him today.<br><br>If he doesn't mind, then ok<br><br>It's the only good thing that's come out of this.<br><br>I wish you all the best.<br><br>The mailbox is canceled. |
|---|---|---|



**American Education and Translation Services** (NAFSA#: 238569, ATA#: 249353)
Website: www.americantranslationservice.com
Boston Office: 6 Pleasant Street, Suite 418, Malden, MA, 02148   /   (781)605-1970/(781)712-0258   /  boston@americantranslationservice.com
NYC Office: 60-20 Woodside Ave, Suite 205, Queens, NY11377   /   (718)521-6708/ 917-970-0588   /  nyc@americantranslationservice.com

**Paragraph 130(3): Original**

| April 7, 2024 | Miss X<br><br>Plaintiff | I kept my promise to you<br><br>he is perfectly ok now<br><br>I hope you get what you want now<br><br>you know he is in Henan with his gf right?<br><br>Do you feel worth it?<br><br>How many essays should be edit for such exchange<br><br>撑不下去随时找我 只要告诉我发生了什么 诚实一点 一笔勾销 |

**Paragraph 130(3): English Translation**

| April 7, 2024 | Miss X<br><br>Plaintiff | I kept my promise to you<br><br>he is perfectly ok now<br><br>I hope you get what you want now<br><br>you know he is in Henan with his gf right?<br><br>Do you feel worth it?<br><br>How many essays should be edit for such exchange<br><br>Call me anytime you can't bear it anymore. Just tell me what's going on, be honest, and it'll all go away. |



American Education and Translation Services (NAFSA#: 238569, ATA#: 249353)
Website: www.americantranslationservice.com
Boston Office: 6 Pleasant Street, Suite 418, Malden, MA, 02148   /   (781)605-1970/(781)712-0258  /  boston@americantranslationservice.com
NYC Office: 60-20 Woodside Ave, Suite 205, Queens, NY11377   /   (718)521-6708/ 917-970-0588   /  nyc@americantranslationservice.com

**Paragraph 132(1): Original**

| March 17, 2024 | Plaintiff | 我不觉得她的心智有你的强<br>她既然这么说了<br>你这边所有全部 over，我们保证<br>let's see 她可以撑多久 |
|---|---|---|

**Paragraph 132(1): English Translation**

| March 17, 2024 | Plaintiff | I don't think her mind is as strong as yours.<br>If she says so,<br>we promise that everything is over on your side.<br>Let's see how long she can hold out. |
|---|---|---|

**Paragraph 132(2): Original**

| March 17, 2024 | Plaintiff | 哈哈，已经 KO<br>你看看她还有力气回消息吗 |
|---|---|---|

**Paragraph 132(2): English Translation**

| March 17, 2024 | Plaintiff | Haha, it's KO!<br>See if she has the strength to reply. |
|---|---|---|

**Paragraph 132(3): Original**

| March 17, 2024 | Plaintiff | Let's end everything here<br>I will ask for all evidence to be deleted<br>一个 25 岁妹子用命给你换的<br>希望你继续高枕无忧 |
|---|---|---|

**Paragraph 132(3): English Translation**

| March 17, 2024 | Plaintiff | Let's end everything here<br>I will ask for all evidence to be deleted<br>A 25-year-old girl who exchanges this with her life for you.<br>Hope you continue to rest easy. |
|---|---|---|

American Education and Translation Services (NAFSA#: 238569, ATA#: 249353)

Website: www.americantranslationservice.com
Boston Office: 6 Pleasant Street, Suite 418, Malden, MA, 02148  /  (781)605-1970/(781)712-0258  /  boston@americantranslationservice.com
NYC Office: 60-20 Woodside Ave, Suite 205, Queens, NY11377  /  (718)521-6708/ 917-970-0588  /  nyc@americantranslationservice.com

**Paragraph 132(4): Original**

| March 30, 2024 | Miss X<br><br>Plaintiff | 我说了，我不怪你，你过来真诚地告诉我发生了什么就好<br><br>不要再 defer progress 了<br><br>拿你自己换这个不值得 |
|---|---|---|

**Paragraph 132(4): English Translation**

| March 30, 2024 | Miss X<br><br>Plaintiff | I told you that I don't blame you. Just come over here and tell me honestly what happened.<br><br>Don't defer progress anymore.<br><br>It's not worth trading yourself for this. |
|---|---|---|



**American Education and Translation Services** (NAFSA#: 238569, ATA#: 249353)
Website: www.americantranslationservice.com
Boston Office: 6 Pleasant Street, Suite 418, Malden, MA, 02148   /  (781)605-1970/(781)712-0258  / boston@americantranslationservice.com
NYC Office: 60-20 Woodside Ave, Suite 205, Queens, NY11377   /  (718)521-6708/ 917-970-0588   /  nyc@americantranslationservice.com

**Paragraph 132(5): Original**

| March 30, 2024 | Miss X<br><br>Plaintiff | It's a favor for you<br><br>我当帮你一个忙<br><br>我给你看看 他会不会管<br><br>or<br><br>真出事的话他是不是安心做他 ed<br><br>again<br><br>if you cannot stand, feel free to talk<br><br>I just want truth<br><br>all will stop as long as you are honest to me |
|---|---|---|

**Paragraph 132(5): English Translation**

| March 30, 2024 | Miss X<br><br>Plaintiff | It's a favor for you<br><br>I'll do you a favor.<br><br>Let me show you if he cares.<br><br>or<br><br>If something goes wrong, will he still work as an ED without conscience?<br><br>again<br><br>if you cannot stand, feel free to talk<br><br>I just want truth<br><br>all will stop as long as you are honest to me |
|---|---|---|

*American Education and Translation Services* (NAFSA#: 238569, ATA#: 249353)

Website: www.americantranslationservice.com

Boston Office: 6 Pleasant Street, Suite 418, Malden, MA, 02148   /   (781)605-1970/(781)712-0258  / boston@americantranslationservice.com

NYC Office: 60-20 Woodside Ave, Suite 205, Queens, NY11377   /   (718)521-6708/ 917-970-0588    /   nyc@americantranslationservice.com

**Paragraph 132(6): Original**

| April 7, 2024 | Miss X<br><br>Plaintiff | 撑不下去随时来找我 |
|---|---|---|

**Paragraph 132(6): English Translation**

| April 7, 2024 | Miss X<br><br>Plaintiff | Come to me anytime if you can't bear this anymore. |
|---|---|---|

**Paragraph 132(7): Original**

| April 7, 2024 | Miss X<br><br>Plaintiff | 我一共给 committee 发过四次不同的 complaint<br><br>只有一次抄送了[Plaintiff] 和你<br><br>其他三次你可以等被找了再看是什么<br><br>撑不下去随时来找我 |
|---|---|---|

**Paragraph 132(7): English Translation**

| April 7, 2024 | Miss X<br><br>Plaintiff | I've sent four different complaints to the committee.<br><br>Only one copy was sent to you and [Plaintiff].<br><br>You can wait until you're approached to see what the other three complaints are.<br><br>Come to me anytime if you can't bear this anymore. |
|---|---|---|



American Education and Translation Services (NAFSA#: 238569, ATA#: 249353)

Website: www.americantranslationservice.com

Boston Office: 6 Pleasant Street, Suite 418, Malden, MA, 02148  / (781)605-1970/(781)712-0258  / boston@americantranslationservice.com
NYC Office: 60-20 Woodside Ave, Suite 205, Queens, NY11377  / (718)521-6708/ 917-970-0588  / nyc@americantranslationservice.com

**Paragraph 134: Original**

我本来想打给你的，现在觉得还是写信吧

其实你很清楚发生过什么

一切都结束吧，大家都不会再出现在对方世界里了

是[Miss X]让我想通的，她很真诚

她的记录我全删了，只是最后想补偿你们一下

所以冒着"不得好死"也发给你了，发完就删了，我不会辜负她的信任

君子论迹不论心，论心世上无完人

祝你一切都好！

**Paragraph 134: English Translation**

I was going to call you, but now I think I'll write.

You know exactly what happened.

It's all over. We will no longer appear in each other's lives again.

It was [Miss X] who made me figure it out. She's very sincere.

I deleted all her records. I just wanted to make it up to you guys at the end.

So, I sent it to you at the risk of death, and then I deleted it, so I wouldn't betray her trust.

The gentleman judges others by their actions, not their intentions. Well, nobody's perfect in the world if judged by intentions.

Wish you all the best!



American Education and Translation Services (NAFSA#: 238569, ATA#: 249353)
Website: www.americantranslationservice.com
Boston Office: 6 Pleasant Street, Suite 418, Malden, MA, 02148   /   (781)605-1970/(781)712-0258   /   boston@americantranslationservice.com
NYC Office: 60-20 Woodside Ave, Suite 205, Queens, NY11377   /   (718)521-6708/ 917-970-0588   /   nyc@americantranslationservice.com