Daniel S. Szalkiewicz, Esq.  (DS2323)
DANIEL SZALKIEWICZ & ASSOCIATES, P.C.
23 WEST 73RD STREET
SUITE 102
NEW YORK, NEW YORK 10023
*Attorneys for the Plaintiff John Doe*

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| JOHN DOE,<br><br>       Plaintiff,<br><br>   v.<br><br>JIA LUN SHAO a/k/a ANDY SHAO and<br>JINGYUN WANG a/k/a VIVIAN WANG<br><br>       Defendants. | Case No. 24-cv-09972 |

**PLAINTIFF'S MEMORANDUM OF LAW IN FURTHER SUPPORT
OF HIS MOTION TO PROCEED UNDER PSEUDONYM**

# Table of Contents

I.   PRELIMINARY STATEMENT ...................................................................4

II.  ARGUMENT ..........................................................................................7

   A.   PLAINTIFF HAS A REASONABLE FEAR OF SEVERE HARM .............8
      i.   Defendant Wang's Cited Cases are Distinguishable from The Instant Case 10
      ii.  Instant Facts Fall Under Specifically Delineated Items Warranting Use of Pseudonym .................................................................................16
      iii. Plaintiff's Desire to Avoid the "Streisand Effect" ....................................17
      iv.  Conclusion................................................................................17

   B.   THE MEGLESS FACTORS WEIGH IN PLAINTIFF'S FAVOR ..............19
      i.   Plaintiff Has Made Best Efforts to Keep his Identity Confidential with Regard to Full Extent of Defendants' False Allegations .................................20
      ii.  Plaintiff's Fear Goes Beyond Mere Embarrassment and Plaintiff has Legitimate Fears of Being Blacklisted in his Industry and Severe Harms.......21
      iii. Plaintiff is a Private Person and there is no Public Interest in Story; Plaintiff Should not be Revictimized by being Forced to Expose his Name ...23
      iv.  Defendants' Confession that Allegations Were Unfounded Makes for Atypically Weak Public Interest in Forever Linking Plaintiff's Name to Admitted Lies .................................................................................24
      v.   There is Strong Public Interest in Maintaining Confidentiality of Plaintiff's Identity to Allow Him to Pursue His Meritorious Claim ...............24
      vi.  Plaintiff May Withdraw Case Rather than Permanently Link Himself to Defendants' Lies and Expose Himself to Further Abuse.................................26
      vii. Plaintiff has Legitimate Motives for Wanting to Remain Anonymous ..26
      viii. Defendants' Opposition to the Pseudonym is Illegitimately Motivated 28

III.  CONCLUSION ..........................................................................................29

# Table of Cases

*Crossfit, Inc. v. Nat'l Strength & Conditioning Ass'n*, No. 14cv1191-JLS(KSC), 2018
U.S. Dist. LEXIS 120136, at *31 (S.D. Cal. July 18, 2018) ...........................................16

*Doe v. First Advantage Background Servs. Corp.*, Civil Action No. 23-647-CFC, 2024
U.S. Dist. LEXIS 49132, at *2 (D. Del. Mar. 20, 2024) ................................................14

*Doe v. Hartford Life & Acc. Ins. Co*., 237 F.R.D. 545, 551 (D.N.J. 2006) ........................7

*Doe v. Hillsborough Twp. Bd. of Educ.*, Civil Action No. 23-22597 (GC) (TJB), 2024
U.S. Dist. LEXIS 156329, at *17 (D.N.J. Aug. 30, 2024) .................................12, 23, 24

*Doe v. Law Offices of Robert A. Schuerger Co.*, Civil Action No. 17-13105
(BRM)(DEA), 2018 U.S. Dist. LEXIS 151816, at *3 (D.N.J. Sep. 6, 2018)................14

*Doe v. Megless,* 654 F.3d 404(3d Cir. 2011) ....................................................7, 10, 15, 19

*Doe v. N.J. State Prison*, Civil Action 24-8290 (ZNQ) (JTQ), 8 (D.N.J. Aug. 9, 2024) ..24

*Doe v. Rider Univ*., Civil Action No. 16-4882 (BRM), 6 (D.N.J. Aug. 7, 2018).............21

*Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981) .............................................................16

*Doe v. Trishul Consultancy*, LLC, Civil Action No. 18-16468 (FLW)(ZNQ), 2019 U.S.
Dist. LEXIS 169051, at *14 (D.N.J. Sep. 30, 2019) .....................................................21

*Does I thru XXIII v. Advanced Textile Corp*., 214 F.3d 1058, 1070 (9th Cir. 2000)...........9

*Guttenberg v. Emery*, 26 F. Supp. 3d 88, 95 (D.D.C. 2014) .............................................25

*Homesite Ins. Co. of the Midwest v. Ewideh, No*. 1:22-CV-1664, 2023 U.S. Dist. LEXIS
13727, at *6 (M.D. Pa. Jan. 26, 2023)...........................................................................14

*In re Allergan BIOCELL Textured Breast Implant Prods. Liab. Litig*, No. 19-MD-2921
(BRM) (JAD), 2020 U.S. Dist. LEXIS 147592, at *21 (D.N.J. Aug. 13, 2020)...........14

*Strike 3 Holdings, LLC v. Doe,* Civil Action No. 23-11443-NMG, 2024 U.S. Dist. LEXIS
203444, at *2 (D. Mass. Nov. 7, 2024) ...................................................................11, 12

*Strike 3 Holdings, LLC v. Doe*, No. 22-1919 (KMW/SAK), 2023 U.S. Dist. LEXIS
95317, at *8 (D.N.J. June 1, 2023)...........................................................................11, 12

3

## I.    <u>PRELIMINARY STATEMENT</u>

Make no mistake: Plaintiff is an innocent victim pursuing his rights against Defendants, two relentless attackers caught by digital footprint evidence returned from court-sanctioned pre-action discovery and subpoenas.  Conversely, Defendants are individuals with a proven history of using any means available to intimidate, harm, and devastate Plaintiff.  As set out here, Plaintiff faces a high risk of severe harm if his identity is disclosed and has a strong legal basis to proceed pseudonymously in his lawsuit against Defendants.

Defendant Wang's desire to further malign Plaintiff on the docket is evident not only in her filing of opposition in the first place but also throughout the document itself.  She argues against Plaintiff proceeding pseudonymously because, in her opinion, he offered only "rank speculation and conjecture" and not "reasonable, evidence-based fear of severe harm" warranting such protection.  Respectfully, Defendant Wang must have neglected the portions of the Complaint and moving papers where her and her husband's anonymously undertaken harassment already caused Plaintiff to be placed on leave with his employer (Cert., ¶4); questioned by former and current colleagues, friends, and acquaintances (Id.); lose out on career opportunities and prospective financial incentives at work (Complaint, ¶209); and suffer mental distress and threats of physical harm (Complaint, ¶¶24, 158, 26).  Indeed, owing to Defendants' past attacks, Plaintiff experienced severe anxiety and

emotional distress, each day fearing attacks and ridicule as well as career-ending consequences, leading him to report defamatory emails to local law enforcement and seek medical help for stress-induced insomnia (Reply Cert., ¶16).

As far as "evidence-based fear" is concerned, past severe harm resulting from previous similar behavior by such relentless individuals as Defendants is as reliable a predictor of future harm as could ever conceivably exist. Plaintiff has averred and reasonable minds can agree that his employer is likely to react even less favorably to allegations against him that are documented on a public docket, even if baseless, than they did to those that were spam mailed to them from anonymous e-mail accounts (Reply Cert., ¶6). Notably, such false allegations will include not only those made in the past but also, inevitably, *new* ones capable of even more and different severe future harm as Defendants grasp at straws to find ways to justify their malicious attacks. Beyond eliciting negative reactions from his employer, publishing Plaintiff's name will multiply all the other harms Defendants already undertook against him.

To further underscore Defendant Wang's nefarious intentions however, it is important to note that Defendant Wang has already attempted to expose Plaintiff's identity since he filed this lawsuit. Indeed, shortly after Plaintiff filed this lawsuit, Plaintiff's attorney was contacted by a Bloomberg reporter who indicated that he had received Plaintiff's name from Defendant Wang and asked for Plaintiff's attorney to

confirm Plaintiff's identity and the name of his employer (Reply Cert., ¶8). Ultimately, given the perceived lack of public interest, Defendant Wang failed to get her exposing story written, despite her best attempts (Reply Cert., ¶10).

Worse yet, there are important circumstances in this case to strengthen Plaintiff's need for anonymity. First, directly tied to the subject matter of the Complaint are false allegations of a sexual nature and the pursuit of his lawsuit will compel Plaintiff to delve into topics of the utmost intimacy, heightening his need for anonymity. Second, the nature of sexually based allegations is inflammatory, the mere accusation of which, if disclosed, can invite harassment and ridicule. Specifically in Plaintiff's case, he works in an exceptionally competitive and political field of finance where allegations of this nature – even if baseless – would cause his professional and personal ruin (Complaint, ¶¶4, 25). Third, Defendants have a proven propensity for scorched earth tactics and Defendant Shao's arrest record further demonstrates his short temper and propensity for violence; as he appears to be representing himself in this matter, Plaintiff will be at an even higher risk of experiencing severe harm due to Defendant Shao's direct access to the public docket. (Complaint, ¶160).

Plaintiff is a non-public figure, and where Defendants have already privately recanted, apologized, and admitted their accusations were "lacking evidence" (Complaint, ¶99) – albeit only to Plaintiff and Miss X – there is truly no legitimate

reason or public interest to proliferate their admitted lies and make Plaintiff further jeopardize his career, reputation, personal relationships, and mental health by revealing his true name as he pursues his rights in court. Rather, there exists strong public interest in maintaining the *confidentiality* of the Plaintiff's identity to avoid deterring him and others like him from pursuing meritorious claims. Notably, allowing Plaintiff to proceed using a pseudonym will still allow the public to access the case and its developments while also protecting Plaintiff's identity as the wrongfully accused individual.

Ultimately, Plaintiff recognizes the public's general interest in having access to the identity of all litigants, but this does not, by itself, outweigh other factors favoring him to sue pseudonymously. *See, e.g.*, *Doe v. Hartford Life & Acc. Ins. Co.*, 237 F.R.D. 545, 551 (D.N.J. 2006). Indeed, as outlined below, the *Megless* factors weigh in Plaintiff's favor because the instant case does precisely fall in that special category of cases in which a litigant's privacy interests outweigh the public's interest in their identity.

## II.   **ARGUMENT**

Initially, as set out above, Plaintiff has made a threshold showing that he has a reasonable fear of severe continued, increased, and/or future harm warranting this Court to move onto the second aspect of its inquiry: the non-exhaustive, nine-factor balancing test from *Doe v. Megless,* 654 F.3d 404, 408 (3d Cir. 2011).

## A. PLAINTIFF HAS A REASONABLE FEAR OF SEVERE HARM

Prior to delving into the balancing test, "a plaintiff must show 'both (1) a fear of severe harm, and (2) that the fear of severe harm is reasonable.'" *Id*.

Defendant Wang cherry-picks six statements from a five-page Certification to conclude that Plaintiff does not have a reasonable fear of severe harm. Missing from Defendant Wang's Memorandum of Law is Plaintiff's explanation of how Defendants' false allegations have already caused him professional, reputational, and personal harms, including being placed on leave at work, missing career opportunities and prospective financial incentives, getting questioned by third parties, and suffering mental distress and threats of physical harm (Cert., ¶¶4, 7, 11; Complaint, ¶158). It further omits Plaintiff's reasonable concern that giving Defendants an unfettered public docket to broadcast their lies will multiply the very harms Defendants already undertook against him (Cert., ¶¶23-25). Finally, it skips Plaintiff's reasonable fears that the docket will become a litigation tool for Defendants to pressure and intimidate him into walking away from the case (Cert., ¶17). If Defendants are allowed to further harass Plaintiff on the docket, Plaintiff has indicated that he is likely to discontinue his meritorious lawsuit rather than endure additional harassment (Cert. ¶18).

Beyond this, Defendants have demonstrated their propensity for scorched earth tactics. Defendants did not just harass Plaintiff; they contacted and demeaned

his girlfriend, contacted dozens of Plaintiff's colleagues, directed their statements to members of the press, and uploaded their falsities online (Complaint, ¶¶1-27). When those attacks failed to result in Plaintiff's termination, Defendants turned to sending close to one hundred harassing e-mails to Plaintiff, including threatening to stalk him physically (Complaint, ¶¶25, 104, 131). As yet another example, their harassment of Miss X included directly communicating with her, physically stalking her at school, claiming responsibility for her getting hit by a car, and contacting her school and prospective employer with misrepresentations about her character with the obvious intent of interfering with her ability to become an attorney (Complaint, ¶130). Defendants do not simply defame; they destroy.

Federal courts have held that relevant to the inquiry of severity are injuries inflicted by third parties and prospective economic harm. *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1070 (9th Cir. 2000). In determining the reasonableness of the plaintiffs' fears, the court held that "[w]hat is relevant is that plaintiffs were threatened, and that a reasonable person would believe that the threat might actually be carried out." *Id*. Here, providing Defendants with a docket on which they can continue their offensive but baseless claims and tie them publicly and permanently to Plaintiff severely jeopardizes Plaintiff's continued employment as well as his personal and professional relationships (Reply Cert., ¶¶6-7, 13, 15). Such fears are clearly reasonable. First, Defendants have historically *made and*

*carried out* threats against Plaintiff taking advantage of what they know about the potential for him being unfairly terminated based on his employer's fear of publicity and/or public perception, rather than fact. This is perfectly demonstrated by how Defendants first threatened to and then *actually* sent defamatory e-mails against Plaintiff to more than two dozen members of major U.S. press firms as well as top ranking members of his employer (Complaint, ¶¶93-95). Second, Defendants further demonstrated their hope that Plaintiff's employer would terminate Plaintiff to protect its reputation when they wrote that Plaintiff's actions "caused tremendous negative impact on [Plaintiff's Employer]'s reputation and image" and "had a detrimental impact on the mental and emotional health of several [Plaintiff Employer] junior employees" (Complaint, ¶73). Third and more pointedly, Defendant Wang's most recent disclosure of Plaintiff's identity to a Bloomberg reporter shows her ongoing commitment to forever linking Plaintiff to her fabricated claims in the instant case (Reply Cert., ¶8).

### i. Defendant Wang's Cited Cases are Distinguishable from The Instant Case

Additionally, the underlying facts in Defendant Wang's cited cases on reasonable fear of severe harm are distinguishable from those at play here. In *Doe v. Megless*, the court concluded that "[b]ecause the flyer neither accused plaintiff of criminal behavior or mental illness, nor disclosed highly sensitive personal information, [plaintiff] did not demonstrate that disclosing his identity would cause

him substantial 'irreparable harm[.]'" *Megless*, 654 F.3d at 406.  Defendants' words were not so open ended.   Instead, Defendants made explicit accusations of criminality such as:

- "[Plaintiff] attempted to rape a victim after getting the victim drunk" (Complaint, ¶93)
- Plaintiff "using and manipulating material non-public information (MNPI) for personal and monetary benefits" (Complaint, ¶93)
- Plaintiff "tries to get the female employees to get drunk and physically assault the employees such as trying to grab their hands, hugging, and kissing and wanted to take them home by force" (Complaint, ¶73)
- "Therefore there is no choice but to seek justice outside of [Plaintiff's Employer] by exposing [Plaintiff]'s actions to the media, followed by filing a criminal litigation against [Plaintiff] upon agreement by the victims" (Complaint, ¶96).
- "[Plaintiff] forced the victim to have unprotected sex and refused to take any responsibility for the foreseen consequences" (Complaint, ¶93).

The above accusations include crimes of rape and insider trading, indicate that Plaintiff is a pathological serial predator with multiple victims, and state an intention to pursue the matter criminally.   Furthermore, Defendants also made false claims and disclosed information of a highly sensitive personal nature such as those relating to Plaintiff's alleged racial discrimination, romantic preferences and indiscretions, as well as intimate representations of his relationship with his girlfriend, and her family background (Complaint ¶73, 81).

Defendant Wang's reliance on *Strike 3 Holdings, LLC* is completely distinguishable. *Strike 3 Holdings, LLC v. Doe*, No. 22-1919 (KMW/SAK), 2023

U.S. Dist. LEXIS 95317, at *8 (D.N.J. June 1, 2023). Strike 3 Holdings, LLC is a company that produces and distributes pornography and as of November 2024, filed nearly 10,000 similar lawsuits for copyright infringement. *See Strike 3 Holdings, LLC v. Doe,* Civil Action No. 23-11443-NMG, 2024 U.S. Dist. LEXIS 203444, at *2 (D. Mass. Nov. 7, 2024). As the court noted, all of Strike 3's cases follow a similar pattern: 1) plaintiff files a copyright claim regarding its pornography against an unidentified defendant, 2) the "John Doe" defendant's real name is discovered, and 3) the case promptly ends in default judgment or voluntary dismissal. *Id.* In Defendant Wang's cited case, Strike 3, and not the John Doe defendant, moved to maintain defendant's pseudonym, without providing the court any reason other than Strike 3 did not want to be accused of coercion. *Strike 3 Holdings, LLC v. Doe*, No. 22-1919, *supra.* The District Court recognized that using a pseudonym is permissible where there is a reasonable fear of sever harm, however, Strike 3 failed to allege that the defendant had any severe fear, much less that it was reasonable. *Id.*

In *Hillsborough Twp. Bd. Of Educ.*, plaintiff relied on a single certification (his own) that public disclosure would exacerbate his and his spouse's mental health issues, negatively impact their marriage, and make his spouse a target of harassment. *Doe v. Hillsborough Twp. Bd. of Educ.*, Civil Action No. 23-22597 (GC) (TJB), 2024 U.S. Dist. LEXIS 156329, at *17 (D.N.J. Aug. 30, 2024). The court found the Hillsborough plaintiff's fear to consist of "generalized, unsubstantiated claims of

current and prospective mental and psychological harm" which are "not recognized" and were not supported by a certification of his spouse or a medical professional. *Id.* As to the Hillsborough plaintiff's fear of future harassment, he relied on news articles in which others were targeted for different types of behavior; the court found it speculative. *Id.* at 25. The court also took issue with plaintiff failing to demonstrate any "substantiated basis" as to why his spouse's relationships would be damaged. *Id.*

Here, Plaintiff is not relying on self-serving or speculative mental distress as the severe harm he faces. First, Plaintiff had already been placed on leave for the allegations which caused him to miss out on career opportunities as well as prospective financial incentives (Complaint, ¶209). Plaintiff reasonably fears that Defendants' legal filings will be taken more seriously by his employer than their anonymous harassment e-mails and, given he was previously placed on leave, has a reasonable basis to believe his employer may terminate him for placing the company in a negative light on a publicly available docket (Reply Cert., ¶¶6-7, 13, 15). Second, Plaintiff's mental distress directly concerns himself and is far from speculative. As outlined above, the mental distress he originally experienced was so severe he had to report the incident to local law enforcement and seek medical help (Reply Cert., ¶16). It is reasonable for Plaintiff to fear severe mental harm in the future if his identity is tied publicly and permanently to Defendants' lies and false

allegations. Third, as outlined before, Defendants' propensity for scorched earth tactics and Defendant Shao's criminal history reasonably and significantly increase Plaintiff's fear of severe harm from retaliation by way of court docket.

Another case to which Defendant Wang cites is *In re Allergan BIOCELL Textured Breast Implant Prods. Liab. Litig*, a matter in which this Court declined to find "decisions to undergo breast implant surgery" and related "unnecessary stigma" of having breast implants to amount to reasonable fear of severe harm. *In re Allergan BIOCELL Textured Breast Implant Prods. Liab. Litig*, No. 19-MD-2921 (BRM) (JAD), 2020 U.S. Dist. LEXIS 147592, at *21 (D.N.J. Aug. 13, 2020). In *Doe v. Law Offices of Robert A. Schuerger Co.*, the plaintiff wanted to avoid the world learning about his request to consolidate student loan debt; needless to say, this Court did not find this to be a reasonable fear of severe harm. *Doe v. Law Offices of Robert A. Schuerger Co.*, Civil Action No. 17-13105 (BRM)(DEA), 2018 U.S. Dist. LEXIS 151816, at *3 (D.N.J. Sep. 6, 2018). Next, Defendant Wang points to *Homesite Ins. Co. of the Midwest*, a "fairly mundane insurance declaratory judgment" containing "nothing so striking or notorious about the allegations." *Homesite Ins. Co. of the Midwest v. Ewideh, No*. 1:22-CV-1664, 2023 U.S. Dist. LEXIS 13727, at *6 (M.D. Pa. Jan. 26, 2023). Defendant Wang's final case, *Doe v. First Advantage Background Servs. Corp.*, pertains to a plaintiff who wished to seal his name due to his fear that it would reveal his prior criminal convictions which had been expunged. *Doe v. First*

*Advantage Background Servs. Corp.*, Civil Action No. 23-647-CFC, 2024 U.S. Dist. LEXIS 49132, at *2 (D. Del. Mar. 20, 2024).  In denying the plaintiff's request, the court in *First Advantage Background Servs. Corp.* emphasized that "the disclosure of the historical fact that a person was convicted *in public proceedings* of a crime does not reveal intimate or highly sensitive information". *Id.*

To be clear, the instant lawsuit is not a case about consolidating student loan debt; it is not a case about avoiding the stigma of having received breast implants; it is not a "mundane" insurance declaratory judgment.  Plaintiff is also not a convicted felon.  Over the course of the past year, Plaintiff has been relentlessly beaten down by false allegations by Defendants, including claims that he is a rapist who refuses to wear condoms and who impregnated one of his victims, that he holds and spreads racial hatred, that he is an inside trader who profits illegally, and that he despises and cheats on his girlfriend (Complaint, ¶¶73, 81, 93).  Even though Defendants' allegations are not true and Defendants have previously admitted privately they were not founded (Complaint, ¶99), this litigation will doubtlessly delve into these deeply personal and intimate matters.  Given Defendants' relentless past actions and Defendant Wang's choice to oppose this motion, discovery and motion practice will be as brutally invasive as it will be contested.

### ii.   Instant Facts Fall Under Specifically Delineated Items Warranting Use of Pseudonym

Almost every case to which Defendant Wang cites contains some version of the following sentiment: "Courts, for example, have allowed parties to litigate under pseudonyms in cases involving "abortion, birth control, transexuality, mental illness, welfare rights of illegitimate children, AIDS, and homosexuality." *Megless, supra.* Notably, Plaintiff's case involves false allegations of abortion, birth control, welfare rights of illegitimate children, and unsafe sex and its consequences.   More specifically, Defendants claimed to multiple third parties that Plaintiff "forced the victim to have unprotected sex and refused to take any responsibility for the foreseen consequences" (Complaint, ¶93) and "openly and blatantly rejected [Miss X] however, [Miss X] got pregnant and asked [Plaintiff] to come back to China. [Plaintiff] still rejected her even after this…" (Complaint, ¶130).

More fundamentally, the rationale of carving out an exception to the general rule of transparency in the above cases is that "prosecution of the suit compelled plaintiffs to disclose information 'of the utmost intimacy[.]'" *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981).  This factor is highly relevant to the instant case as Plaintiff will have to delve into topics and information of "utmost intimacy" including information about his mental state, sexual history and habits, birth control, and family planning.  In his certification, Plaintiff confirmed that he considers such topics to be among the most intimate subjects he could imagine (Reply Cert., ¶15).

### iii.    Plaintiff's Desire to Avoid the "Streisand Effect"

Federal courts throughout the country have begun recognizing the "Streisand Effect" – the concept that "efforts to suppress information sometimes has the opposite effect". *Crossfit, Inc. v. Nat'l Strength & Conditioning Ass'n*, No. 14cv1191-JLS(KSC), 2018 U.S. Dist. LEXIS 120136, at *31 (S.D. Cal. July 18, 2018). Here, Plaintiff has a valid reason to shield himself from accusations which Defendants have already indicated were "lacking evidence" (Complaint, ¶99). Despite Defendants' *private* admission that their allegations were unfounded, Plaintiff has every reason to believe that Defendants intend to continue their false narrative on this docket, just like when Defendant Wang attempted to convince a Bloomberg reporter to publicly "out" Plaintiff for her (Reply Cert., ¶8). If forced to expose his true name to right the wrongs undertaken by Defendants, Plaintiff will be victimizing himself, giving Defendants exactly what they wanted in the first place. Plaintiff should not have to choose between giving up litigating a meritorious claim or being underhandedly maligned by Defendants for the rest of his life.

### iv.    Conclusion

Plaintiff's fear of severe continued, increased, and/or future harm is reasonable. Defendants have already accused Plaintiff of being a rapist, among other things, with the purpose of impacting his continued employment and personal relationships. To an extent, Defendants succeeded; Plaintiff was placed on leave, his personal

reputation and personal relationships impacted, and he suffered severe emotional distress. However, it is reasonable to state that mere words of such inflammatory nature contained within public litigation, even if baseless, would apply more pressure on Plaintiff's employer and cause more commotion in his personal life, resulting in more severe consequences to Plaintiff's employment and personal health than anonymously sent allegations. As threatening to Plaintiff's future is Defendants' propensity for scorched earth tactics, which have in the past included harassing Plaintiff's girlfriend, dozens of his colleagues, and members of the press with their falsities as well as attempting to lay waste not only to Plaintiff but also those who supported him, including Miss X who was also relentlessly harassed for having the audacity to stand up to Defendants. Defendants punished Miss X by spreading vile lies about her romantic relationships and academic honesty to her school and prospective employer as well as by claiming responsibility for her being struck by a car. Defendants' methods are calculated to inflict maximum harm on their victims' reputation, career, and personal well-being and in filing opposition to Plaintiff's motion, they show that they have no intention of changing their techniques. Indeed, as previously mentioned, Defendants have already attempted to disclose Plaintiff's alleged identity in the press following his filing of this lawsuit. Stated differently, disclosing Plaintiff's name on a public docket *will* open doors to

unfettered attack campaigns by Defendants as have been attempted repeatedly in the past.

Because Plaintiff has a reasonable fear of severe harm, this Court should next apply the *Megless* factors to the facts at hand prior to allowing Plaintiff the ability to protect himself from Defendants.

## B. THE MEGLESS FACTORS WEIGH IN PLAINTIFF'S FAVOR

Under the *Megless* test, the factors that weigh in favor of anonymity are:

> (1) the extent to which the identity of the litigant has been kept confidential; (2) the bases upon which disclosure is feared or sought to be avoided, and the substantiality of these bases; (3) the magnitude of the public interest in maintaining the confidentiality of the litigant's identity; (4) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities; (5) the undesirability of an outcome adverse to the pseudonymous party and attributable to his refusal to pursue the case at the price of being publicly identified; and (6) whether the party seeking to sue pseudonymously has illegitimate ulterior motives.
>
> *Id*. at 409 (internal quotation marks omitted).

Conversely, the *Megless* factors weighing against anonymity are:

> (1) the universal level of public interest in access to the identities of litigants; (2) whether, because of the subject matter of this litigation, the status of the litigant as a public figure, or otherwise, there is a particularly strong interest in knowing the litigant's identities, beyond the public's interest which is normally obtained; and (3) whether the opposition to pseudonym by counsel, the public, or the press is illegitimately motivated.
>
> (*Id*.).

19

### i.   Plaintiff Has Made Best Efforts to Keep his Identity Confidential with Regard to Full Extent of Defendants' False Allegations

Defendant Wang points to Plaintiff's pre-action discovery lawsuit to argue he has already linked himself to Defendants' lies, claiming that "a simple internet search of the large corporations that Plaintiff identified in his Complaint along with Plaintiff counsel's name will readily reveal Plaintiff's identity." This is simply false. First, a review of the docket reveals the truth: Plaintiff's pre-action Petition was measly four pages and 22 paragraphs in length and contained only a tiny fraction of Defendants' statements which form the basis of the instant lawsuit. Plaintiff included the minimum he felt he could include that would still warrant the court signing his Order to Show Cause (Reply Cert., ¶20). Nowhere in the pre-action discovery lawsuit are Defendants' allegations of rape, forcing women to have sex without protection, unwanted impregnation, or insider trading. Second, it is important to recognize that the pre-action discovery lawsuit ultimately involved different defendants, opposing counsel, and courts than the instant lawsuit, and there is no definitive linkage between the two. Additionally, Plaintiff's counsel has far more than one client. To use her own words, Defendant Wang's statement here is nothing more than "rank speculation and conjecture."

Defendant Wang further states that "Plaintiff's own actions have not kept his identity confidential, and Plaintiff should not be permitted to now ask this Court to

impose confidentiality." Such conclusionary statement misses a few important factors at play. First, at the time of filing his pre-action discovery lawsuit, Plaintiff was compelled to avoid a more protracted litigation process that comes with a request of anonymity because he needed to preserve and obtain data as soon as possible otherwise risked data loss (Reply Cert., ¶20). Second, Plaintiff was, at the time, enduring an actively expanding campaign of harassment using anonymous e-mail accounts and was in need of more immediate relief (Id.). Third, the bulk of the most heinous attacks described in the Complaint occurred *after* the Plaintiff filed the February 2024 pre-action petition for discovery (Complaint, ¶¶91-134). This represents a fundamental change, for the worse, in Plaintiff's fear of severe harm and warrants his request for use of pseudonym in the instant lawsuit. Fourth and more broadly speaking, Plaintiff has made "substantial efforts to maintain anonymity" in a fashion comparable to *Doe v. Rider Univ.*, Civil Action No. 16-4882 (BRM), 6 (D.N.J. Aug. 7, 2018). He has limited disclosure of his identity in the instant lawsuit to only a handful of other people on a strictly need-to-know basis (Reply Cert., ¶21). As he prepared the instant lawsuit, Plaintiff also made careful efforts to ensure all information and evidence relating to his identity were redacted.

### ii.    Plaintiff's Fear Goes Beyond Mere Embarrassment and Plaintiff has Legitimate Fears of Being Blacklisted in his Industry Harms

In *Doe v. Trishul Consultancy, LLC*, this Court held that "fear of *increased* embarrassment, humiliation, and emotional distress should...friends and business

associates learn of these events is well-founded" and demonstrates that "exposing [one's] identity poses the potential for severe harm that exceeds mere embarrassment" *Doe v. Trishul Consultancy*, LLC, Civil Action No. 18-16468 (FLW)(ZNQ), 2019 U.S. Dist. LEXIS 169051, at \*14 (D.N.J. Sep. 30, 2019).  While Plaintiff may not be the victim of sexual assault, he is a victim of wrongful allegations of sexually based crimes, and he too will suffer *increased* embarrassment, humiliation, and emotional distress should he be made to forever link his name to Defendants' baseless rape allegations.  These two kinds of victim share an important common characteristic: when they decide to litigate their claims, they will need to delve into matters of utmost intimacy and/or a highly personal nature, as well as be exposed to harassment and ridicule given the sexually based and inflammatory subject matter.  Furthermore, as outlined above, Plaintiff was already once placed on leave due to anonymously sent harassment e-mails and has reason to believe that if he litigates this matter using his true name, Defendants will so badly devastate his reputation on the public docket that his employer will have no choice but to terminate him to protect their own reputation.

Defendant Wang cites to *Hillsborough Twp. Bd. Of Educ.* in support of her argument against Plaintiff's future severe harm, however, as outlined above, her cited cases including *Hillsborough* are wildly distinguishable from the instant case. Notably, what should not be lost on this Court is Defendant Wang's astute use of an

ellipses to hide the fact that the *Hillsborough* plaintiff was primarily concerned for his *wife's* mental health issues and potential for harassment. Fundamentally different from the *Hillsborough* plaintiff, Plaintiff in this case primarily fears severe continued, increased and/or future harm to *himself* as outlined extensively above. More so, the *Hillsborough* court distinguished a scientific paper included in support of anonymity by the plaintiff in *Hillsborough* which discussed the psychological impact and health implications on individuals "wrongfully accused (not necessarily convicted or charged) of a crime involving a victim (e.g. crimes such as abuse, sexual assault, rape…)". *Hillsborough,*, *supra* at 18. While the court considered the *Hillsborough* plaintiff to fall outside of the scientific paper's defined scope because he was charged only with a petty "disorderly persons offense," Plaintiff in this case has been wrongfully accused of serious crimes such as rape, sexual assault, and insider trading, and should therefore fall squarely within such scope (Complaint, ¶¶73, 93).

### iii.    Plaintiff is a Private Person and there is no Public Interest in Story; Plaintiff Should not be Revictimized by being Forced to Expose his Name

Plaintiff is a non-public figure who lives a private life and is not in a position of power (Reply Cert., ¶17). That there is no public interest in the story can be no clearer than the fact that Defendants went to great efforts to have a story written about the lawsuit and *failed*, first when they sent a blast e-mail to more than two

dozen members of major U.S. press firms in or around February 2024 (Complaint, ¶11) and again when Defendant Wang provided Plaintiff's alleged identity to a Bloomberg reporter in an attempt to get her exposing story written (Reply Cert., ¶8).

More so, while this Court has subject matter jurisdiction of this case and venue in this district is appropriate, Plaintiff himself is a non-U.S. citizen, which further weakens any public interest in his identity.

### iv. Defendants' Confession that Allegations Were Unfounded Makes for Atypically Weak Public Interest in Forever Linking Plaintiff's Name to Admitted Lies

Here, Defendant Wang misstates the applicable factor to argue that only "purely legal" issues can lead to "atypically weak public interest." In reality, the fourth *Megless* factor is "whether, because of the purely legal nature of the issues presented **or otherwise**, there is an atypically weak public interest in knowing the litigant[s'] identities. *Hillsborough*, *supra at* 14 (*emphasis added)*. Here, the "**or otherwise**" is that Defendants have already admitted their allegations lacked basis in fact (Complaint, ¶99) and there is truly no reason or public interest warranting proliferating their admitted lies.

### v. There is Strong Public Interest in Maintaining Confidentiality of Plaintiff's Identity to Allow Him to Pursue His Meritorious Claim

Defendant Wang makes a generalized argument that simply because plenty of defamation lawsuits are litigated with named plaintiffs, the same blanket treatment

should be applied on Plaintiff.  As outlined above, the cases to which Defendant Wang cites are distinguishable from the facts at play here.  Indeed, federal courts have recognized that there is a "special category of cases in which the party's privacy interests outweigh the public's interest in open judicial proceedings[,]"and Plaintiff has provided extensive arguments here as to why his case indeed falls under this "special category." *Doe v. N.J. State Prison*, Civil Action 24-8290 (ZNQ) (JTQ), 8 (D.N.J. Aug. 9, 2024).

Equally important is the strong public interest in protecting Plaintiff's identity such that he is not deterred from bringing a meritorious lawsuit for false allegations. Victims of defamation who choose to remain silent rather than litigate for fear of giving further life to defendants' words understand the previously discussed Streisand Effect.  More clearly, the court in *Guttenberg* stated "unfortunately for plaintiffs, that is precisely the dilemma faced by all plaintiffs seeking to enforce non-disparagement provisions, and it is similar to the dilemma faced by plaintiffs in defamation cases, who often end up publicizing defamatory statements much more than if they had not filed a lawsuit". *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 95 (D.D.C. 2014).  Plaintiff should not be made to publicize Defendants' statements more than Defendants already have.  If Plaintiff is denied the use of a pseudonym, other victims may be deterred from suing to vindicate their rights, merely because they fear that they will be stigmatized in their community if forced to tie their names

with inflammatory allegations even if false.  Indeed, unscrupulous employees may be encouraged to concoct false allegations against others at work for nefarious reasons with the expectation that these individuals will not pursue their rights in court.

### vi.    Plaintiff May Withdraw Case Rather than Permanently Link Himself to Defendants' Lies and Expose Himself to Further Abuse

Plaintiff has sworn that he is "immensely fearful of what [Defendants] would be willing to put on a public docket just to upset me" and that "[f]orcing [him] to forever link [his] name to Defendants' claims would only give Defendants exactly what they sought out to accomplish – [his] complete and utter humiliation[.]" Cert., ¶¶23-25.  Plaintiff has further sworn that he fears Defendants will use the docket as a "tool for punishment – publicly accusing [him] of who knows what else to intimidate [him] into walking away from this case" and "if forced to forever link [his] name to these vile accusations on a public docket, [he] may very well be left with no choice but to not move forward with this lawsuit and be deprived of justice." Cert., ¶¶17-18.

### vii.    Plaintiff has Legitimate Motives for Wanting to Remain Anonymous

First, Plaintiff has set forth various well-founded motives to sue pseudonymously, most notably his reasonable fear of severe continued, increased, and/or future harm.

26

Second, Defendant Wang's claim that Plaintiff has an illegitimate motive to remain anonymous is patently ridiculous. Plaintiff and those around him have been victims of Defendants for the better part of a year, and now Plaintiff is simply seeking to pursue his legitimate right in court without having to revictimize himself and tie his name publicly and permanently to their false allegations. It defies logic to assert that this is somehow "retaliatory" against Defendants. Notably, as it relates to Defendants, Plaintiff's Complaint contains verbatim quotations from communications sent by Defendants as well as relevant information which informs this Court of their motives and nefarious acts that have inflicted severe harm on Plaintiff and caused him to fear for his safety and the safety of those around him. Furthermore, Plaintiff prepared for the Complaint for almost a year before filing, specifically having gone through pre-action discovery which has returned information that ensures he has a meritorious claim against the right parties (Complaint, ¶14). Third, even in face of Defendant Wang's underhanded attempt to expose him to the Bloomberg reporter, Plaintiff insisted to only pursue his right legitimately and within the confines of the court and refused to engage with the reporter (Reply Cert., ¶8).

Indeed, Defendant Wang has failed to offer any evidence to support her assertion that Plaintiff has illegitimate ulterior motives to seek to sue pseudonymously. More specifically, the only claim she could venture, that Plaintiff

"wholly disregards Defendants' alleged apology...reveals an illegitimate, retaliatory ulterior motive," is inane and unpersuasive. Defendants' private apology for their far more broadly disseminated lies offers no reasonable relief and does not make Plaintiff's desire to seek justice in court using a pseudonym "illegitimate" or "retaliatory." As explained in the Complaint, such private apology is more likely Defendants' hollow attempt to evade legal liabilities once it was clear they had been identified through pre-action discovery (Complaint, ¶99).

### viii.    Defendants' Opposition to the Pseudonym is Illegitimately Motivated

Conversely, while it seems repetitive to belabor why Defendants' opposition to Plaintiff using a pseudonym is illegitimately motivated, Plaintiff will do so once more. Defendants spent months attacking Plaintiff from every angle – with his girlfriend, with his friends, to the press, and with his employer (Complaint, ¶¶1-27). When they were not successful in bringing down Plaintiff they then began attacking someone who supported him with his employer (Id.). If given carte blanche on a public docket, Defendants will again lay waste to Plaintiff's reputation only this time it will be viewable by the public at large. Notably, Defendant Wang submits no sworn statement about her pure intentions for further exposing Plaintiff and instead has her attorney positing on her behalf a series of logically fallacious arguments, which suggests a lack of any legitimate motivation for her opposition. Importantly,

a Google search of Plaintiff does not produce Defendants' laundry list of allegations against him, but if Plaintiff is forced to use his true name it will.

## III.    CONCLUSION

Clearly, the *Megless* factors weigh in favor of Plaintiff suing pseudonymously. Plaintiff's identity has been kept confidential to a large and very important extent, shielding him so far from having to revictimize himself.  He has established strong bases upon which disclosure is legitimately feared, primarily relating to the highly personal, intimate, and inflammatory nature of the subject matter of instant lawsuit, and more importantly to Defendants' proven propensity for scorched earth tactics to severely harm him.  Indeed, if forced to disclose his name, Plaintiff may be left with no choice but to give up pursuing an otherwise meritorious claim to save himself from further abuse and severe harms.  Should this happen, it will be a true case of avoidable injustice.

Conversely, it is clear Defendant Wang's opposition to pseudonym is nefariously motivated, specifically, by the desire to tie Plaintiff's name publicly and permanently to her and her husband's lies and to further intimidate, harm, and devastate Plaintiff.

Ultimately, the only factor that weighs against Plaintiff is the general public's interest in the identities of all litigants in U.S. courts.  However, for all the reasons delineated above, including that Plaintiff is unequivocally a non-public figure

residing outside of the U.S., that Defendants have already admitted their allegations to be unfounded, and that Plaintiff will suffer severe harm and likely abandon his case if forced to republish Defendants' falsities alongside his name, it is clear the instant case does precisely fall in that special category of cases in which Plaintiff's privacy interests outweigh the public's interest in his identity.

Plaintiff respectfully submits that, for all of the reasons delineated above, he should be permitted to continue to use a pseudonym.

Dated:        December 30, 2024

Respectfully submitted

<u>Daniel S. Szalkiewicz, Esq.</u>
**Daniel Szalkiewicz & Associates, P.C.**
Daniel S. Szalkiewicz, Esq.
23 West 73rd Street, Suite 102
New York, New York 10023
(212) 706-1007
daniel@lawdss.com

Attorneys for Plaintiff John Doe