# Morgan Lewis

**Terry D. Johnson**
Partner
+1.609.919.6689
terry.johnson@morganlewis.com

February 26, 2026

**VIA ECF**

Hon. Cari Fais, U.S.M.J.
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, NJ 07102

**Re:   Kueh v. Shao/Wang**
    **Civil Action No. 2:24-cv-09972-BRM-CF**
    **Client Matter No. 140037-0001**

Dear Judge Fais:

Pursuant to Your Honor's Order dated February 5, 2026 (Dkt. No. 63), the parties have conferred and submit this joint letter regarding the remaining discovery disputes. The parties' positions are provided below:

### 1. PLAINTIFF'S IN-PERSON DEPOSITION

#### a. Plaintiff Russel Kueh's Position:

On December 23, 2025, Defendant Vivian Wang ("Defendant Wang") noticed the in-person deposition of Plaintiff Russel Kueh ("Plaintiff") for January 21, 2026 at the Courthouse, 50 Walnut Street, Newark, New Jersey 07102.  On January 2, 2026, Plaintiff's counsel served a written objection to the deposition notice, stating that "[t]he noticed location in Newark, New Jersey imposes an undue burden on Plaintiff, who resides in Hong Kong Special Administrative Region in the People's Republic of China. The requirement to travel to Newark for an in-person deposition is unnecessarily burdensome and expensive given the availability of remote deposition technology.  Additionally, in order to appear in person, it is understand [sic] that the plaintiff needs to obtain a special visa and this may not obtainable prior to the January 21, 2026 date."  Plaintiff also has not flown long

**Morgan, Lewis & Bockius LLP**

502 Carnegie Center
Princeton, NJ  08540-6241          ☎ +1.609.919.6600
United States                      ✆ +1.877.432.9652

A Pennsylvania Limited Liability Partnership | Michelle Silverman, Partner-in-Charge

Hon. Cari Fais, U.S.M.J.
February 26, 2026
Page 2

distances in over a decade due to medical reasons and is in the process of obtaining a letter from his doctor detailing his condition.

**b.    Defendants' Position:**

Both Defendant Wang and Defendant Andy Shao ("Defendant Shao") respectfully request the Court order Plaintiff to appear for an in-person deposition in New Jersey.  Pursuant to Federal Rule of Civil Procedure 30(b)(1), a deposition notice must state only the time and place for taking the deposition.  It is black letter law that "the plaintiff must make himself available for deposition in the district in which he has brought suit.  The general rule is inapplicable only where the party to be deposed establishes 'compelling circumstance' or 'extreme hardship.'" *McClain v. Camouflage Assocs.*, Civ. No. 93-0994, 1994 U.S. Dist. LEXIS 3676, at *4 (E.D.P.A. Mar. 25, 1994).

The facts of the *McClain* matter are particularly instructive here.  The *McClain* matter was similarly a defamation case in a federal district court (Eastern District of Pennsylvania).  The plaintiff, a professional athlete, was working abroad in Greece and Australia.  The defendant noticed the plaintiff's deposition in the jurisdiction, and plaintiff replied by stating that he could not attend the deposition in the jurisdiction because it would reportedly impose an "extreme hardship."  The court rejected this argument, and ordered the plaintiff's appearance in the jurisdiction for the deposition.

Although Plaintiff reportedly resides in China, he has filed the instant lawsuit in the District of New Jersey.  Both Defendants in this matter reside in New Jersey.  And, as Plaintiff alleges in his Amended Complaint, the District of New Jersey is where "a substantial part of the events forming the basis of the Complaint occurred, and where a substantial part of the evidence involved in the subject action is situated." (ECF No. 38 ("Amended Complaint"), ¶ 34).  Plaintiff chose the District of New Jersey as the venue for this lawsuit, and should not be able to now claim that it is somehow inconvenient to appear in person.  Most certainly, if this matter were scheduled for a settlement conference with Your Honor, or if this matter eventually proceeds to trial, Plaintiff would most certainly be required to appear in-person at those proceedings.  In-person attendance at Plaintiff's deposition should be no different.  This is particularly true in a defamation case where Plaintiff's credibility as to alleged defamatory

Hon. Cari Fais, U.S.M.J.
February 26, 2026
Page 3

statements, and the purported damages that resulted from those alleged statements, is central to the case.

Finally, Defendants note that, to the extent that plaintiff is claiming that he may encounter difficulty in obtaining the appropriate visa from the United States to appear for his deposition, the relevant regulations explicitly permit the issuance of a visa for the purposes of litigation. The Department of State's Foreign Affairs Manual expressly states that the federal government issues visas to eligible applicants "if they are traveling to the United States to…litigate." 9 FAM 402.2-5(B).

## 2. DISCOVERY OF ELECTRONIC INFORMATION

### a. Plaintiff Russel Kueh's:

Plaintiff is seeking the production of records from Defendant Shao and Wang relating to this matter, including all responsive emails, text messages and other documents. Prior to this letter, Plaintiff has not received any paper discovery from either Defendant.

In order to appropriately discuss the scope of ESI discovery Plaintiff has specifically requested that both Defendants identify the devices, accounts, and search terms used to locate responsive information. The parties are still discussing the parameters of what were searched. However, Plaintiff asserts that merely searching for "Russell", "Kueh" and "RK" in a personal email account is insufficient.

Additionally, it appears that Defendant Shao is still in the process of obtaining documents and information. Today, he produced for the first time a partial screenshot of a conversation simultaneously with this letter.

In light of the lack of documents produced, Plaintiff has taken the position that a meaningful conversation should occur as to what was done to identify discoverable documents and why they have not been previously turned over. Absent further explanation Plaintiff believes a third-party vendor is necessary to ensure all discoverable information has been obtained.

Hon. Cari Fais, U.S.M.J.
February 26, 2026
Page 4

**b.    Defendant Andy Shao's Position:**

Counsel for Defendant Shao has conferred with his client, and this account does not belong to Mr. Shao. The e-mail address and password were given to Defendant Shao by an anonymous—and now deleted—WeChat account which contained information about Plaintiff. *See*, Exhibit 1. Defendant Shao accessed the account a limited number of times because it contained information about Plaintiff, who had a business relationship with his wife, Defendant Wang. Plaintiff's counsel is welcome to hire an expert to access the account with the password provided by Defendant Shao.

**c.    Defendant Vivian Wang's Position:**

It is Defendant Wang's position that there is absolutely no need for the forensic examination of her electronic devices. As an initial matter, forensic exams of a party's electronic devices are only ordered in rare circumstances, and usually where there is some other viable evidence that the party has failed to comply with its discovery obligations. *See, e.g., Estate of Lasiw by Lasiw v. Pereira*, 475 N.J. Super. 378, 399 (D.N.J. 2023) (quoting *Lipsky v. N.J. Ass'n of Health Plans, Inc.*, 474 N.J. Super. 447, 469 (App. Div. 2023) (holding that "an order compelling forensic examination of electronic devices by the requesting party's e-discovery expert, over the responding party's objection, must be considered an extraordinary remedy, beyond what should generally be required of a party . . . without less invasive methods having been exhausted, and without there having been a showing that the responding entity defaulted on its obligations to search its records and produce the requested data, as opposed to mere skepticism that they have done so")).

Here, that is simply not the case. Defendant Wang has already searched her personal emails, personal text messages, and social media accounts (WeChat, Whatsapp and Instagram) using keywords including "Russell", "Kueh" and "RK." Defendant Wang reported that she did not find any documents related to Plaintiff.

To the extent that the Court finds (which it should not) that this is one of the very rare cases in which a forensic examination of Defendant Wang's electronic devices is necessary to verify her search efforts, Plaintiff (and not Defendant Wang) should be required to bear the costs of retaining that expert.

Hon. Cari Fais, U.S.M.J.
February 26, 2026
Page 5

### 3. EMPLOYMENT RECORDS FROM JPMORGAN CHASE

**a. Plaintiff Russel Kueh's Position:**

Both Plaintiff and Defendant Wang are currently employed by JPMorgan Chase. As the Court is aware, JPMorgan Chase is not a party in this matter. During discovery, Plaintiff has requested Defendant Wang to search her work email account to identify and produce any "responsive" documents.

Defendant has asserted that she cannot search her work emails because it would violate JPMorgan's "Code of Conduct." Importantly, the Code itself states: "Nothing in the Code should be interpreted to prevent employees from engaging in activities that are protected under laws…" Lawful discovery in a civil action does not violate such a policy.

Moreover, there is no recognized federal "employee- employer privilege" that would shield workplace documents from disclosure in the manner Defendant suggests. Unlike the attorney-client privilege, no such generalized privilege exists under federal law.

Referring back to Point 2, Defendant has not searched her work email accounts, nor has she identified what potentially responsive emails exist. Nor has Defendant requested the ability to disclose these emails from her employer. Where privilege is asserted, the responding party is required to expressly claim it and describe the nature of the withheld documents in a manner that enables the other party to assess the claim. *See* Fed. R. Civ. P. 26(b)(5).

Further, under Federal Rule of Civil Procedure 34(a)(1), a party must produce documents within her "possession, custody, or control." It is the responding party's obligation to produce responsive materials within that scope. Defendant may not shift the burden to Plaintiff to obtain her work emails from her employer.

For all of these reasons, Plaintiff maintains that Defendant's discovery responses remain deficient.

**b. Defendant Vivian Wang's Position:**

Defendant Wang has informed Plaintiff that she is simply unable to produce any of JPMorgan's documents and information. Any effort to access and

Hon. Cari Fais, U.S.M.J.
February 26, 2026
Page 6

produce her employer's documents would be a blatant violation of her employer's workplace policies, and could potentially place Defendant Wang's employment in jeopardy. For instance, the 2025 version of JPMorgan Chase's Code of Conduct, which is publicly available online at https://www.jpmorganchase.com/content/dam/jpmc/jpmorgan-chase-and-co/documents/code-of-conduct.pdf (last visited February 26, 2026), is attached hereto as Exhibit 2. Section 3.2 (Communicating Responsibly) of the Code of Conduct clearly states that JPMorgan Chase employees have an "obligation to protect the confidentiality of [JPMorgan Chase's] business and customer information." This includes "[m]aintaining the confidentiality of meetings and internal communications, such as emails . . .," which the Code of Conduct states is "crucial to protecting [JPMorgan Chase's] organization integrity, competitive advantage, and trust." *See* Exhibit 2 at 12. Accordingly, JPMorgan Chase employees are instructed to "not engage in unauthorized sharing of these materials, which can compromise sensitive information, disrupt operations, and damage [JPMorgan Chase's] reputation." *Id.*

In addition to Section 3.2, Section 3.1 (Managing Information) of the Code of Conduct instructs JPMorgan Chase employees to "not discuss, access, or use [JPMorgan Chase's] confidential and/or proprietary information unless [they] have a legitimate business need to do so." *Id.* at 11. JPMorgan Chase employees are warned that "[t]he loss or unauthorized disclosure of confidential information may harm [JPMorgan Chase] and its clients and may result in termination of employment." *Id.* Based on the foregoing, Defendant Wang is unquestionably prohibited from accessing and producing any JPMorgan Chase documents in this litigation.

Moreover, Defendant Wang does not have "possession, custody, or control" over JPMorgan Chase's documents within the meaning of Federal Rule of Civil Procedure 34(a). In the Third Circuit, "control" is defined as "the legal right to obtain the documents requested on demand," and absent such a right, a litigating party "has no duty to produce" documents in the physical possession of another entity. *Gerling Int'l Ins. Co. v. Comm'r*, 839 F.2d 131, 140 (3d Cir. 1988). As a mere employee, Defendant Wang has no legal right to demand that JPMorgan Chase produce its corporate records, and JPMorgan Chase's own policies affirmatively prohibit her from accessing or disclosing such information outside of a legitimate business need. To the extent that Plaintiff is seeking any emails or other documents from

Hon. Cari Fais, U.S.M.J.
February 26, 2026
Page 7

>JPMorgan Chase, it is Plaintiff's obligation to serve a third-party subpoena on JPMorgan Chase.

We greatly appreciate the Court's time and consideration regarding these issues.

Respectfully submitted,

/s/ Terry D. Johnson

Terry D. Johnson

TDJ/GRN
cc:    All counsel of record via ECF